**Elizabeth Gurley FLYNN**

v.

**Dean RUSK, Secretary of State.**

**Herbert Eugene APTHEKER**

v.

**Dean RUSK, Secretary of State.**

**Civ. A. Nos. 3886-62, 3478-62.**

United States District Court
District of Columbia.

July 12, 1963.

cases were consolidated by order of the Court on April 29, 1963.

Section 6 of the Subversive Activities Control Act, provides, in pertinent part, as follows:

"(a) When a Communist organization as defined in paragraph (5) of section 782 of this title, is registered, or there is in effect a final order of the Board requiring such organization to register, it shall be unlawful for any member of such organization, with knowledge or notice that such organization is so registered or that such order has become final—

"(1) to make application for a passport, or the renewal of a passport, to be issued or renewed by or under the authority of the United States; or

"(2) to use or attempt to use any such passport."

For the purposes of the questions here presented, the above section of the Act became effective October 20, 1961, when the Communist Party of the United States was ordered to register by a final order of the Subversive Activities Control Board, pursuant to the authority of section 7 of the Act, 50 U.S.C. § 786, said section 7 having been previously upheld by the Supreme Court in Communist Party v. Subversive Activities Control Board, 367 U.S. 1, 81 S.Ct. 1357, 6 L.Ed. 2d 625 (1961).

On January 22, 1962, the Acting Director of the Passport Office notified both plaintiffs that their passports were revoked because of the belief by the Department of State that use of their passports would be in violation of the Subversive Activities Control Act. Plaintiffs were also informed of their right to a hearing. Subsequently, both passports expired: Mr. Aptheker's on December 9, 1962, and Mrs. Flynn's on March 9, 1963.

Administrative hearings were held at the request of the plaintiffs at which plaintiffs were represented by counsel but did not choose to appear personally.

---

Joseph Forer, Washington, D. C., and John J. Abt, New York City, of the Bar of the State of New York, pro hac vice, by special leave of Court, for plaintiffs.

Benjamin C. Flannagan, Atty., Dept. of Justice, with whom J. Walter Yeagley, Asst. Atty. Gen., and Oran H. Waterman, Atty., Dept. of Justice, were on the brief, for defendant.

Before BURGER, Circuit Judge, and HART and WALSH, District Judges.

On April 30, 1963, upon application of each plaintiff and agreement of the Government and after motion to convene a three-judge court was heard and granted, this Court was appointed to hear the question of the constitutional validity of section 6 of the Subversive Activities Control Act of 1950, 64 Stat. 993, 50 U.S.C. § 785, as applied to the facts of the cases at bar.

The plaintiff Elizabeth Gurley Flynn filed suit on November 6, 1962, and the plaintiff Herbert Eugene Aptheker on December 14, 1962. The facts of each case are practically identical, and the

The hearing examiner, in each case, found the plaintiffs to be members of the Communist Party and affirmed the ruling of the Passport Office. Both plaintiffs subsequently were accorded hearings before the Board of Passport Appeals and the decisions of the hearing examiners were affirmed. The Secretary of State adopted the findings of the Board as to both plaintiffs and held,

"there is a preponderance of evidence in the record to show that at all material times [each plaintiff] was a member of the Communist Party of the United States with knowledge or notice that such organization had been required to register as a Communist organization under the Subversive Activities Control Act."

The matter is now before the Court on cross-motions for summary judgment, both parties stipulating that all administrative remedies have been exhausted. The plaintiffs agree that for the purpose of these proceedings, the Secretary of State had an adequate evidentiary basis for finding that plaintiffs were members of the Communist Party. The plaintiffs further agree that the Secretary of State made findings on all matters required by section 6. The Secretary is not required, under the terms of the statute, to make any findings as to the purpose of the travel for which the passport is requested and he in fact made none.

The validity of section 6 has not been determined by the courts, but such determination was reserved for future consideration in Communist Party v. Subversive Activities Control Board, supra, 367 U.S. at 79, 81 S.Ct. at 1401. The Supreme Court stated:

"It is wholly speculative now to foreshadow whether, or under what conditions, a member of the Party may in the future apply for a passport * * *. None of these things may happen. If they do, appropriate administrative and judicial procedures will be available to test the constitutionality of applications of particular sections of the Act to particular persons in particular situations. Nothing justifies previsioning those issues now."

Plaintiffs allege that they wish to travel abroad for recreation and study in pursuit of their profession as writers. They contend that section 6 of the Act is unconstitutional as applied to them for the following reasons:

(1) Plaintiffs are deprived without due process of law of their constitutional liberty to travel abroad, in violation of the Fifth Amendment to the Constitution of the United States;

(2) Plaintiffs' rights to freedom of speech, press and assembly are abridged in violation of the First Amendment.

(3) A penalty is imposed on plaintiffs without a judicial trial, and therefore constitutes a bill of attainder, in violation of article I, section 9 of the Constitution;

(4) Plaintiffs are deprived of the right to trial by jury as required by the Fifth and Sixth Amendments and article III, section 2, clause 3 of the Constitution; and

(5) The action of the Secretary of State under section 6 constitutes imposition of a cruel and unusual punishment in violation of the Eighth Amendment.

The defendant admits all the material facts as alleged by the plaintiffs but denies that section 6 is unconstitutional. The defendant contends that the disqualification imposed by section 6 is a valid regulatory device, reasonably drawn to meet the dangers of foreign subversion and that it does not effect punishment for past activity but rather that it is a regulation of the activities of present members of the Communist Party necessary for the preservation of the Government.

It is admitted by both parties that if either plaintiff terminates his or her membership in the Communist Party that section 6 will no longer apply to him or her. They also agree that it would be a futile act for either plaintiff to apply for a passport or renewal of a passport until such membership is terminated.

Indeed such application would be unlawful under section 6 of the Act as quoted above.

There is no contention that the administrative procedures provided by the defendant for determining plaintiffs' membership in the Communist Party were in any way inadequate or violated procedural due process.

The plaintiffs pray that the defendant be enjoined from enforcing section 6 of the Act and that defendant be ordered to reissue to each of them a valid United States passport.

The sole question to be decided by this Court is the constitutional validity of the section in question as applied to the facts of these cases. In order to properly decide this question it is necessary to view the enactment of the Subversive Activities Control Act of 1950 in its proper context.

In 1948 a Congressional Committee found that legislation was needed to

" * * * cut the threads which bind the international Communist conspiracy together by restricting travel of members of the American section of the World Communist Movement."

H.R.1844, 80th Cong., 2d Sess., dated April 30, 1948. The same thought was expressed in the debates which preceded enactment of the Internal Security Act of 1950, 64 Stat. 987 et seq., 50 U.S.C. 781 et seq., 94 Cong.Rec. 5850 and 5851; "H.Rept. 2980", 81st Cong.2d Sess., dated August 22, 1950, U. S. Code Congressional Service p. 3886.

The Congress found in Section 2(1) of the Subversive Activities Control Act of 1950, 64 Stat. 987, 50 U.S.C. 781(1), that

"[t]here exists a world Communist movement which, in its origins, its development, and its present practice, is a world-wide revolutionary movement whose purpose it is, by treachery, deceit, infiltration into other groups (governmental and otherwise), espionage, sabotage, terrorism, and any other means deemed necessary, to establish a Communist totalitarian dictatorship in the countries throughout the world through the medium of a world-wide Communist organization."

The Congress also found in Section 2(6) of the Act that

"[t]he Communist action organizations so established and utilized in various countries, acting under such control, direction, and discipline, endeavor to carry out the objectives of the world Communist movement by bringing about the overthrow of existing governments by any available means, including force if necessary, and setting up Communist totalitarian dictatorships which will be subservient to the most powerful existing Communist totalitarian dictatorship. * * *"

The Congress further found in Section 2(8) of the Act that

"[d]ue to the nature and scope of the world Communist movement, with the existence of affiliated constituent elements working toward common objectives in various countries of the world, travel of Communist members, representatives, and agents from country to country facilitates communication and is a prerequisite for the carrying on of activities to further the purposes of the Communist movement."

The Congressional findings contained in the 1950 Act are binding on this Court. As the Supreme Court stated in the case of Communist Party v. Subversive Activities Control Board, supra, 367 U.S. at 94–95, 81 S.Ct. at 1409, with respect to the Congressional findings relating to the nature of the world Communist movement and the threat it poses to the security of the United States:

"It is not for the courts to reexamine the validity of these legislative findings and reject them. See Harisiades v. Shaughnessy, 342 U.S. 580, 590 [72 S.Ct. 512, 96 L.Ed. 586]. They are the product of extensive investigation by Committees

of Congress over more than a decade and a half. [Footnote omitted.] Cf. Nebbia v. New York, 291 U.S. 502, 516, 530 [54 S.Ct. 505, 78 L.Ed. 940]. We certainly cannot dismiss them as unfounded or irrational imaginings. See Galvan v. Press, 347 U.S. 522, 529 [74 S.Ct. 737, 98 L.Ed. 911]; American Communications Ass'n v. Douds, 339 U.S. 382, 388–389 [70 S.Ct. 674, 94 L.Ed. 925]. * * * "

In interpreting these same cases cited above, the Court of Appeals for the District of Columbia Circuit has stated,

"The rule, as we understand it, is that, if it appears Congress has power over the subject matter of a statute, and if the findings of fact are not baseless but are based upon extensive investigation, the courts are to adopt those findings." Communist Party v. Subversive Activities Control Board, 93 U.S.App.D.C. 66, 223 F.2d 531, 565 (1954).

■ The plaintiffs nevertheless argue that the findings made by the Congress in the Subversive Activities Control Act of 1950 as to the dangers threatening our Government by the world Communist movement, and upheld by the Supreme Court in Communist Party v. Subversive Activities Control Board, supra, were made some thirteen years ago and may not be considered binding on the courts at this time. There has been no evidence offered or adduced that the "leopard" of the world Communist movement has changed a single spot in the past thirteen years nor would common sense nor common knowledge indicate any such change.

In addition, section 13(b) of the Act, 50 U.S.C. § 792(b), contains the procedure whereby an organization which has been required to register by a final order of the Subversive Activities Control Board may seek the cancellation of such registration. On proper showing, the Board could cancel their prior registration order and the members of the organization would be under no impediment as to the use or issuance of passports. To our knowledge, the Communist Party has not sought to utilize the procedures under section 13(b).

The findings of the Congress made in section 2 of the Subversive Activities Control Act of 1950 are therefore as valid and as binding on this Court today as on the day on which they were made. It is in the light of these congressional findings that the plaintiffs' claims of unconstitutionality of section 6 of the Act must be judged.

■■ Denial of a passport to a citizen is a denial of the right to travel outside the United States. Worthy v. Herter, 106 U.S.App.D.C. 153, 270 F.2d 905 (1959), cert. den., 361 U.S. 918, 80 S.Ct. 255, 4 L.Ed.2d 186. "The right to travel is a part of the 'liberty' of which the citizen cannot be deprived without due process of law under the Fifth Amendment." Kent v. Dulles, 357 U.S. 116, 125, 78 S.Ct. 1113, 1118, 2 L.Ed.2d 1204 (1958). The Supreme Court further noted in Kent that "[i]f that 'liberty' is to be regulated, it must be pursuant to the law-making functions of the Congress." Id. 357 U.S. at 129, 78 S.Ct. at 1119. The Supreme Court in Kent did not review the constitutionality of the restrictions on travel involved in that case. It merely held that the Secretary of State did not have the authority to deny passports to citizens because of their alleged Communistic beliefs and associations and their refusal to file affidavits concerning their membership in the Communist Party when sections 2 and 6 of the Subversive Activities Control Act had not yet become effective. The Court said it would be

"strange to infer that pending the effectiveness of that law, the Secretary has been silently granted by Congress the larger, the more pervasive power to curtail in his discretion the free movement of citizens in order to satisfy himself about their beliefs or associations." Id. 357 U.S. at 130, 78 S.Ct. at 1120.

It is clear in the present case that certain liberties of these plaintiffs, as

alleged by them in their brief in these consolidated cases and in oral argument before this Court, are being restricted. Restriction or regulation of liberty, however, by no means indicates constitutional invalidity of the regulatory scheme. As the Supreme Court stated in Communist Party v. Subversive Activities Control Board, supra, 367 U.S. at 96–97, 81 S.Ct. at 1410,

> "Individual liberties fundamental to American institutions are not to be destroyed under pretext of preserving those institutions, even from the gravest external dangers. But where the problems of accommodating the exigencies of self-preservation and the values of liberty are as complex and intricate as they are in the situation described in the findings of § 2 of the Subversive Activities Control Act—when existing government is menaced by a worldwide integrated movement which employs every combination of possible means, peaceful and violent, domestic and foreign, overt and clandestine, to destroy the government itself—the legislative judgment as to how that threat may best be met consistently with the safeguarding of personal freedom is not to be set aside merely because the judgment of judges would, in the first instance, have chosen other methods. Especially where Congress, in seeking to reconcile competing and urgently demanding values within our social institutions, legislates not to prohibit individuals from organizing for the effectuation of ends found to be menacing to the very existence of those institutions, but only to prescribe the conditions under which such organization is permitted, the legislative determination must be respected. United Public Workers v. Mitchell, 330 U.S. 75 [, 67 S.Ct. 556, 91 L.Ed. 754]; American Communications Ass'n v. Douds, supra."

In the Douds case cited, the Court upheld the validity of Section 9(h) of the Na-

tional Labor Relations Act which denies the benefits of certain provisions of that Act to labor organization officers who have not filed non-Communist affidavits. The opinion, 339 U.S. at 390–391, 70 S. Ct. at 679–680, states, "We think it is clear, in addition, that the remedy provided by § 9(h) bears reasonable relation to the evil which the statute was designed to reach."

■■ Such is the case here. In view of the findings by the Congress set forth above, we hold that the enactment by Congress of section 6, which prohibits these plaintiffs from obtaining passports so long as they are members of an organization—in this case the Communist Party—under a final order to register with the Attorney General, see 50 U.S.C. § 786(a), is a valid exercise of the power of Congress to protect and preserve our Government against the threat posed by the world Communist movement and that the regulatory scheme bears a reasonable relation thereto. Under circumstances such as these, our basic system of democracy permits the reasonable deprivation of the liberty of certain of its citizens who are brought within the proscriptions of a legislative determination by due process of law. We further hold that the deprivation of liberty, such as it is as applied to these plaintiffs, is not a cruel and unusual punishment in violation of the Eighth Amendment, but is rather a reasonable regulation of conduct which bears a direct relation to the evil Congress has found inimical to the interests of the United States as a sovereign nation. See section 2(8) of the Act quoted above.

It is argued that substantive due process of law is denied the plaintiffs herein because section 6 of the Subversive Activities Control Act requires the denial of a passport upon a mere finding that the plaintiffs are members of the Communist Party and because the Act does not go further and require a determination that the plaintiffs do not wish to travel abroad simply for personal reasons of pleasure and recreation, but that they in fact intend to travel abroad for the ad-

ditional purpose of carrying on activities to further the purposes of the world Communist movement. In other words, the plaintiffs argue that Congress may not conclusively presume that the plaintiffs, who have admittedly been lawfully determined to be members of the Communist Party, which in turn has lawfully been determined to be a Communist-action organization as defined in section 3 (3) of the Act, 50 U.S.C. § 782(3), will act as members of the Communist Party while travelling abroad. They say the defendant-Secretary must presume that they are travelling for purely innocent purposes unless procedures are provided for determining their thoughts and intentions and it is affirmatively found that it is their thought and intention to act as members of the Communist Party and to carry on activities while abroad to further the purposes of the world Communist movement.

We hold that for Congress conclusively to presume that a member of a Communist-action organization while travelling abroad will act like a member of such an organization as defined by the statute—by carrying on activities to further the purposes of the world Communist movement which presents "a clear and present danger to the security of the United States and to the existence of free American institutions," section 2 (15) of the Act, 50 U.S.C. § 781(15)— is not so unreasonable as to violate the plaintiffs' constitutional rights. We so hold in light of the Congressional findings set forth in section 2 of the Act, mindful of the peculiar and fundamental nature of those findings, and in light of the lawful procedures set forth in the Act, and followed in these cases before us, for determining whether an organization is a Communist-action organization and whether the individual citizens involved are knowingly members of such an organization.

The record in these cases, furthermore, shows that the plaintiff Flynn joined the Communist Party in 1937, has been a member of the National Committee of the Communist Party since 1938, and is currently the Chairman of the Communist Party of the United States of America. The plaintiff Aptheker joined the Party in 1939 and is presently Editor of Political Affairs, the self-described "theoretical organ of the Communist Party" of the United States. These facts are undisputed for purposes of the motions for summary judgment before this Court on review of the administrative proceedings below. Thus these plaintiffs clearly have meaningful associations with the Communist Party in this country, to say the least. This fact negates, in these cases, any unknowing or naive relationship with the organization under a final order to register with the Attorney General of which these plaintiffs are members. The Congressional presumption therefore retains a notable vitality. See Gastelum-Quinones v. Kennedy, 37 U.S. 469, 83 S.Ct. 1819, 10 L.Ed.2d 1013; Rowoldt v. Perfetto, 355 U.S. 115, 120, 78 S.Ct. 180, 2 L.Ed. 2d 140 (1957); Galvan v. Press, 347 U. S. 522, 528, 74 S.Ct. 737, 98 L.Ed. 911 (1954).

The plaintiffs contend that section 6 is a bill of attainder, but as was said in the Douds case, 339 U.S. at 413–414, 70 S.Ct. at 691–692:

"* * * in the previous decisions the individuals involved were in fact being punished for *past* actions; whereas in this case they are subject to possible loss of position only because there is substantial ground for the congressional judgment that their beliefs and loyalties will be transformed into *future* conduct. Of course, the history of the past conduct is the foundation for the judgment as to what the future conduct is likely to be; but that does not alter the conclusion that § 9(h) is intended to prevent future action rather than to punish past action.

"This distinction is emphasized by the fact that members of those groups identified in § 9(h) are free to serve as union officers if at any time they renounce the allegiances which constituted a bar to signing

the affidavit in the past." [Emphasis in original.]

The same situation exists here. Section 6 would not be a bar to the issuance or use of a passport if the plaintiffs renounced their present membership in the Communist Party. See also Trop v. Dulles, 356 U.S. 86, 95, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958); United States v. Lovett, 328 U.S. 303, 315, 66 S.Ct. 1073, 90 L.Ed. 1252 (1946); Cummings v. Missouri, 4 Wall. 277, 71 U.S. 277, 18 L. Ed. 356 (1866).

In the instant case the restriction is not as severe as that in the Douds case, where the individuals were "subject to possible loss of position." Here, the plaintiffs are free to travel throughout the United States and most of the Western Hemisphere. The limitation on their right to travel is restricted to those countries which require a United States citizen to have a passport to enter their borders.

It was also stated in Communist Party v. Subversive Activities Control Board, 367 U.S. 1, 86–87, 81 S.Ct. 1357, 1404–1405, 6 L.Ed.2d 625,

"The [Subversive Activities Control] Act is not a bill of attainder. It attaches not to specified organizations but to described activities in which an organization may or may not engage. * * * Present activity constitutes an operative element to which the statute attaches legal consequences * * *."

It is clear to this Court that section 6 of the Act is not penal nor is it a bill of attainder. It is instead a legitimate exercise of the authority of Congress to regulate the travel of members of Communist organizations, based on the legislative determination that such travel would be inimicable and dangerous to the security of the United States.

We therefore hold that the Constitution does not prohibit the denial of passports to plaintiffs as present members of a Communist organization under section 6 of the Subversive Activities Control Act of 1950.

Defendant's motions for summary judgment are granted as to each case.

The plaintiffs' motions for summary judgment in each case are denied.

The plaintiffs' requests for permanent restraining orders against the defendant are denied.