**William ALBERTSON, Petitioner,**

v.

**SUBVERSIVE ACTIVITIES CONTROL BOARD, Respondent.**

**Roscoe Quincy PROCTOR, Petitioner,**

v.

**SUBVERSIVE ACTIVITIES CONTROL BOARD, Respondent.**

**Nos. 17492, 17623.**

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 28, 1963.

Decided April 23, 1964.

Messrs. John J. Abt, New York City, of the bar of the Court of Appeals of New York, *pro hac vice*, by special leave of court, and Joseph Forer, Washington, D. C., for petitioners.

Mr. Kevin T. Maroney, Atty., Dept. of Justice, with whom Asst. Atty. Gen., J. Walter Yeagley, Messrs. Frank R. Hunter, Jr., Gen. Counsel, Subversive Activities Control Board, and George B. Searls and Mrs. Lee B. Anderson, Attys., Dept.

of Justice, were on the brief, for respondent. Mr. Peter Paul Hanagan, Atty., Subversive Activities Control Board, also entered an appearance for respondent.

Mr. Leonard B. Boudin, New York City, filed a brief in No. 17,623 on behalf of National Lawyers Guild, as *amicus curiae,* urging reversal.

Before BAZELON, Chief Judge, and BASTIAN and McGOWAN, Circuit Judges.

McGOWAN, Circuit Judge:

These are proceedings for review, pursuant to § 14(a) of the Subversive Activities Control Act (50 U.S.C. § 781 *et seq.*), of two separate orders of the Subversive Activities Control Board requiring petitioners, Albertson and Proctor, to register under Section 8 of the Act as members of "the Communist Party of the United States of America, a Communist-action organization." Petitioners do not claim any deviation by the Board from the prescribed statutory procedure; nor do they assert that the orders are not supported by adequate evidence. Rather, they attack the orders on the ground that the underlying statutory provisions are, for various reasons, unconstitutional.

These claims of constitutional infirmity fall into two groups. The first is compounded of arguments which import that the orders are invalid because of certain consequences which might flow from failure to comply with them. We do not consider these questions ripe, as yet, for judicial consideration. The second group is addressed to the proposition that the bare existence of orders, without more, impairs petitioners' constitutional rights. As to these grounds, we affirm the Board's action.

I

The scheme of the statute involved in these cases is that, if a Communist-action organization fails to register as required by an order of the Board (issued pursuant to Sections 7 and 13 of the Act) and thereby fails to disclose its membership, the members individually may be

320

compelled to register as such.[1] This individual obligation attaches only after default by the organization, and only after the fact of membership has been found to exist in a proceeding before the Board initiated by the Attorney General against a particular person.[2] Registration itself consists of filing a signed registration form identifying oneself as a member of the organization and giving one's address.[3] The statute also provides that this act of registration is to be accompanied by the filing of a separate registration statement containing such information as the Attorney General may, by regulation, prescribe.[4] Pursuant to this grant of authority, the Attorney General has called for such additional information as date and place of birth, *aliases* used during the past ten years, and all offices held in the organization presently or during the preceding twelve months, together with a description of the duties performed during any

such tenures of office.[5] Failure by an individual to comply with a Board order requiring him to register is punishable by a fine of not more than $10,000, or imprisonment for not more than five years, or both, with each day of noncompliance constituting a separate offense. These penalties follow upon conviction pursuant to the usual criminal processes established independently of the Act.

These proceedings were initiated by the Attorney General's representations to the Board that petitioners were members of the Communist Party of the United States; that that organization had theretofore been found by the Board to be a "Communist-action organization" and ordered to register under Section 7 of the Act; that such organization had not registered; and that, accordingly, the Board · should order petitioners to register under Section 8. The answers filed by petitioners denied that the Com-

1. Section 8 of the Act provides:
   "(a) Any individual who is or becomes a member of any organization concerning which (1) there is in effect a final order of the Board requiring such organization to register under section 7(a) of this title as a Communist-action organization, (2) more than thirty days have elapsed since such order has become final, and (3) such organization is not registered under section 7 of this title as a Communist-action organization, shall within sixty days after said order has become final, or within thirty days after becoming a member of such organization, whichever is later, register with the Attorney General as a member of such organization."

2. Section 13 of the Act provides:
   "(a) Whenever the Attorney General shall have reason to believe that any organization which has not registerd under subsection (a) or subsection (b) of section 7 of this title is in fact an organization of a kind required to be registered under such subsection, or that any individual who has not registered under section 8 of this title is in fact required to register under such section, he shall file with the Board and serve upon such organization or individual a petition for an order requiring such organization or individual to register pursuant to such subsection or section, as the case may be. Each such petition shall be verified

under oath, and shall contain a statement of the facts upon which the Attorney General relies in support of his prayer for the issuance of such order.
   \* \* \* \* \*
   "(g) If, after hearing upon a petition filed under subsection (a) of this section, the Board determines—
   \* \* \* \* \*
   "(2) that an individual is a member of a Communist-action organization (including an organization required by final order of the Board to register under section 7 (a) of this title, [*sic*] it shall make a report in writing in which it shall state its findings as to the facts and shall issue and cause to be served on such individual an order requiring him to register as such under section 8 of this title."

3. Form IS–52a, Budget Bureau No. 43–R414 (Ed. 9–6–61).

4. Section 8(c) of the Act provides:
   "The registration made by any individual under subsection[s] (a) or (b) of this section shall be accompanied by a registration statement to be prepared and filed in such manner and form, and containing such information, as the Attorney General shall by regulations prescribe."

5. Form IS–52, Budget Bureau No. 43–R301.2.

munist Party was a "Communist-action organization"; refused, by reason of a claim of privilege against self-incrimination, to answer the allegations of petitioners' membership in the Party; and asserted the invalidity of Sections 8 and 13 of the Act on various constitutional grounds. After separate hearings at which the Attorney General adduced evidence and petitioners did not, the orders under review were issued.

## II

Petitioners press strongly the contention that the membership registration provisions of the Act collide directly with their Fifth Amendment immunity against self-incrimination, and that, because of this conflict, the Board's orders should now be declared invalid. Congress has, they say, so legislated with respect to the Communist Party that membership therein has taken on direct and serious criminal connotations, creating dangers of such a nature as to relieve against any duty, however imposed, of self-revelation. The argument, in substance, is that there is no room within the Fifth Amendment for the simultaneous operation of the contrasting legislative approaches of prohibition on pain of criminal punishment, on the one hand, and regulation through the publicity of compelled disclosure, on the other.

That the point is not without force is evident from the recent decision of this court in Communist Party v. United States, 118 U.S.App.D.C. ——, 331 F.2d 807 (No. 17,583, decided Dec. 17, 1963). That was an appeal by the Communist Party of the United States from its conviction by a jury on an indictment for failing to register as a Communist-action organization, as required by a Board order issued pursuant to Sections 7 and 15 of the Act. We reversed and remanded for a new trial on the ground that, since the registration requirements involved action on behalf of the organization by an officer or authorized individual who would thereby identify himself with the Party, the self-incrimination shield of the Fifth Amendment placed the prose-

cution in a criminal trial under the necessity of proving, as an essential element of the crime charged, the availability to the defendant organization of an individual willing to effect the registration and to assume the concomitant risk of criminal exposure. There having been a deficiency of proof in this respect, we set aside the Party's conviction but afforded the Government an opportunity to supply such proof in a new trial.

That case, however, presented us with an appeal from a criminal conviction for refusing to comply with a Board order, and not with a statutory review of the order itself. The latter proceeding, indeed, had already taken place, culminating in the Supreme Court's decision in Communist Party v. Subversive Activities Control Board, 367 U.S. 1, 81 S.Ct. 1357, 6 L.Ed.2d 625 (1961), upholding the Board's order which found the Communist Party to be a "Communist-action organization" and which required it to register as such. In that review proceeding, the Party advanced many contentions with respect to the invalidity of the order and of the Act under which it was issued. Many of these were founded in the Constitution. None prevailed, and most were disposed of on the merits. A conspicuous exception in this latter respect was the self-incrimination attack upon the requirement that the Party register.

The Supreme Court explicitly refrained from passing upon the merits of this challenge because it was premature. Communist Party v. SACB, 367 U.S. 1, 105–110, 81 S.Ct. 1357, 1417, 6 L.Ed. 2d 625 (1961). The Court pointed out that there were certain contingencies standing between the bare issuance of the order requiring registration and its enforcement as against a claim of the privilege. One was whether the privilege would in fact be claimed, and another was whether, if claimed, it would be honored. Over and above these matters, however, the Court also noted that any disallowance of a claim of the privilege in the context of this Act is likely to raise complex and difficult legal issues

which can best be dealt with in the precise factual setting in which they finally arise. Questions of this nature, said the Court, are "questions which should not be discussed in advance of the necessity of deciding them"; and it went on to say that the point when that necessity exists, if ever, is "when enforcement proceedings for failure to register are instituted against the Party or against its officers."

■ We think the same reasoning extends to the registration requirements applicable to members of the Party. It is pressed upon us that, unlike the situation as it was before the Supreme Court, here the privilege has been claimed and denied. But the facts relied upon in support of this contention are, in respect of the claim, that the privilege was advanced in petitioners' answers to the Attorney General's petition to the Board initiating these proceedings; and that it was asserted again in the petition for review in this court. With respect to denial, this is said to reside in the action of the Attorney General in continuing the proceedings before the Board in the face of the answers, the action of the Board in issuing the orders, and the action of the Attorney General, as the Board's lawyer, in defending the orders before this court.

But these circumstances were, of course, all present in the record before the Supreme Court in the *Communist Party* review proceeding, and do not, in and of themselves, offer any basis for differentiating this case from that in terms of prematurity. What is new since the earlier decision is the fact that the Attorney General did receive and reject a claim of privilege anonymously tendered on behalf of officers of the Party, and did move to have the Party indicted, tried and convicted in criminal proceedings for failure to comply with the registration order. It could presumably be urged upon us, although petitioners appear not to have done so in their papers, that this demonstrates beyond peradventure that any claim of privilege by petitioners as a justification for not registering will inexorably be followed by criminal prosecution, and that this court, anticipating that certainty, should go ahead now and decide the issues relating to the privilege.

It is to be remembered, however, that the criminal prosecution of the Party has thus far resulted in a judicial determination that the registration requirement of the Act, at least in the case of the Party and its officers, presents major problems in respect of the Fifth Amendment privilege. It seems unlikely that these problems are without parallel in the case of mere members of the Party. In any event, it is by no means clear as of this moment, any more than it was at the time of the Supreme Court decision, that affirmance of the orders before us will inevitably result in the invocation of criminal processes *vis-a-vis* the petitioners for failure to register pursuant to a claim of Fifth Amendment immunity. If denial of that claim in the future is pressed to the point of criminal prosecution, it remains true that, insofar as the protective reach of the Fifth Amendment is concerned, that proceeding "will provide an adequate forum for litigation of that issue." Communist Party v. SACB, 367 U.S. at 107, 81 S.Ct. at 1416. Apart from the natural apprehensions of petitioners with respect to the burdens of criminal prosecution, we believe it to be a better forum in the sense that legal issues can be resolved in the light of the peculiar factual setting in which they arise. Be this as it may, however, it is a forum which may never be reached, and we see no reason to anticipate decisions which may never have to be made.

■ Nor can we at this stage vacate the order on the ground that the statute is unconstitutional because it compels the production of potentially incriminating information while allowing "the exercise of the Fifth Amendment privilege only under circumstances which effectively nullify the Amendment's protection." Communist Party v. SACB, 367 U.S. at 109, 81 S.Ct. at 1417. See Boyd v. United States, 116 U.S. 616 (1886). Compare Communist Party v. SACB, 96 U.S.App. D.C. 66, 115–16, 223 F.2d 531, 580–581

(1954) (Bazelon, J, dissenting). Whether the Subversive Activities Control Act is such a statute may not be determined, as the Supreme Court said in 1961, until the question is raised in a criminal prosecution.[6]

### III

We turn now to those issues which are presently ripe for review. The same arguments here advanced were, for the most part, raised in respect of the registration order directed to the Communist Party, and were rejected in the 1961 opinion of the Supreme Court. Though different considerations may perhaps arise when, as here, the contentions are made on behalf of individuals, as distinct from the organization of which they are members, we nevertheless consider that case to be largely determinative of the remaining issues urged upon us in this proceeding.

■ 1. The petitioners first contend that the registration provisions violate the Due Process Clause "because they exact admissions which serve no governmental purpose." The Supreme Court, in the 1961 case, held that the Government had a legitimate interest in discovering and disclosing the identity of members of the Communist Party. That conclusion obtains here as well. Section 8 operates only if the Party has not yet registered under Section 7. It is, thus, an alternative method of achieving the Gov-

ernment's aim. Petitioners attempt to distinguish Section 8 from Section 7 on the ground that, since an administrative finding of the individual's membership is a prerequisite to the orders issuing under Section 13(g) (2), the registration requirement serves no additional disclosure function. The short answer is that, in the absence of more comprehensive interpretation of the Act, particularly regarding the sanctions, we do not know whether an additional function is performed.

We are dealing with an unusual statute. Congress conceived the Subversive Activities Control Act as a comprehensive regulatory scheme, comprising Board proceedings leading to registration orders, restrictions imposed on all those who were the subjects of registration orders, and penalties levied on those who disobeyed the orders. The Supreme Court, in the 1961 opinion, refused to consider the legal consequences arising out of the sanctioning provisions, but affirmed the issuance of registration orders as a means reasonably related to the achievement of a goal within the general area of Congress' competence to legislate. Since the order here appears to be reasonably related to Congress' general objective, and, since there has been no determination that that goal or the means of achieving it employed in this Act are invalid on other constitutional grounds, we can not now entertain constitutional

---

6. Two other contentions made by petitioners fall within the sweep of what we have said hereinabove about ripeness. One is that the Act deprives petitioners of their right to a jury trial. This rests upon a reading of the statute as making the administrative determination of the status of the Communist Party binding upon petitioners in a criminal prosecution for non-compliance with the Board's orders. This is, obviously, a question of statutory construction, with constitutional implications, to be raised and decided when, and if, a criminal trial occurs.

The second derives from the challenge made to the grant of authority, in Section 8(c) of the Act, to the Attorney General to formulate, by regulation, the information to be supplied as an incident to registration. This authority is said to

be so broad in scope and so lacking in standards for its exercise as to encounter sundry insurmountable constitutional obstacles. There is no showing that the regulations which the Attorney General has promulgated exceed the bounds of Congress' likely intentions. Compare the provisions of § 7(d) of the Act (prescribing the information to be contained in registration statements filed by Communist-action and Communist-front organizations). Until there is such a showing, the propriety of the Attorney General's actions and the conditions under which Congress has permitted him to act can best be inquired into judicially in a specific criminal prosecution, if any is ever initiated—a setting of greater factual concreteness.

**324**

objection on grounds that there is no independent governmental purpose.

■ 2. Petitioners contend next that the registration provisions violate the First Amendment "because they extort declarations contrary to belief and conscience." This is, in essence, an argument that freedom of speech embraces a right not to identify oneself publicly with a political organization, since any such identification inevitably involves attribution to the individual of what either are, or are asserted to be, the political ideals and objectives of the organization. We believe, however, that the 1961 opinion of the Supreme Court settled this question by holding that the menace of the communist conspiracy, as found to exist by the Congress, justified such invasions of private rights. As pointed out in that case, registration requirements are not a new approach to the Government's problem of getting information and, in some cases, making it public. The courts have upheld this general approach, subject, of course, to the scrutiny in each case of the private right in relation to the governmental purpose. See United States v. Harriss, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954) (upholding the Federal Regulation of Lobbying Act, 2 U.S.C. §§ 261–270); Burroughs v. United States, 290 U.S. 534, 54 S.Ct. 287, 78 L.Ed. 484 (1934) (upholding the Federal Corrupt Practices Act, 2 U.S.C. §§ 241–245); American Communications Assn. v. Douds, 339 U.S. 382, 70 S.Ct. 674, 94 L.Ed. 925 (1950) (upholding the oath requirements of the Taft-Hartley Act); New York ex rel. Bryant v. Zimmerman, 278 U.S. 63, 49 S.Ct. 61, 73 L.Ed. 184 (1928); cf. The Foreign Agents Registration Act, 22 U.

S.C. §§ 611–621. Compare N. A. A. C. P. v. Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958) and Thomas v. Collins, 323 U.S. 516, 65 S.Ct. 315, 89 L. Ed. 430 (1945).

■ 3. Petitioners further contend that the registration provisions violate the First Amendment and the Due Process Clause "because they impose unjustifiable restraint on association." That part of the question which is before us now, whether the registration provisions alone place forbidden pressures on the freedom of association, has been answered by the Supreme Court in the negative.[7]

■ 4. Finally, it is suggested that the provisions constitute a bill of attainder "because the 1953 determinations as to the character of the Communist Party is made conclusive against petitioners." In the absence of any showing that circumstances have changed significantly since the Board's determination of the Party's status in 1953, we do not find it necessary to reexamine this issue here. See National Council of American-Soviet Friendship, Inc. v. SACB, 116 U.S.App. D.C. 162, 322 F.2d 375, 392 (1963); Weinstock v. SACB, 118 U.S.App.D.C. ——, 331 F.2d 76 (concurring opinion); Flynn v. Rusk, 219 F.Supp. 709, 713 (D. D.C.1963) (cert. granted); cf. Communist Party v. SACB, 367 U.S. at pp. 82–88, 81 S.Ct. 1357; Jefferson School of Social Science v. SACB, 118 U.S.App.D.C. ——, 331 F.2d 76. Also see, footnote 6, *supra*.

The orders of the Board in these cases are

Affirmed.

BASTIAN, Circuit Judge, concurs in the result.

---

7. If the petitioners seek to pose the question "[W]hether Congress has power to outlaw an association, group or party either on the ground that it advocates a policy of violent overthrow of the existing Government at some time in the distant future or on the ground that it is ideologically subservient to some foreign country," (taken from Justice Black's 1961 dissenting opinion, 367 U.S. at 147, 81 S.Ct. at 1437) the question is prema-

ture, as the 1961 majority opinion makes plain. For, according to that opinion, in the absence of any consideration of the sanctions attaching to a registration order, the statute does not "*outlaw* an association, group or party" (emphasis added); it is simply a regulatory statute. Thus the majority opinion did not consider the question posed, and we may not consider it until such time as the Act's sanctions are before us.