INTERNATIONAL UNION OF MINE,
MILL AND SMELTER WORK-
ERS, Petitioner,

v.

SUBVERSIVE ACTIVITIES CONTROL
BOARD, Respondent.

No. 17135.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 15, 1964.

Decided Nov. 1, 1965.

Messrs. Nathan Witt, New York City, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of court, and Joseph Forer, Washington, D. C., for petitioner.

Mr. George B. Searls, Atty., Dept. of Justice, with whom Mrs. Lee B. Anderson and Miss Doris H. Spangenburg, Attys., Dept. of Justice, were on the brief, for respondent. Messrs. Frank R. Hunter, Jr., Gen. Counsel, Subversive Activities Control Board, Kevin T. Maroney and Robert S. Brady, Attys., Dept. of Justice, also entered appearances for respondent.

Before WILBUR K. MILLER, Senior Circuit Judge, and WASHINGTON and MC-GOWAN, Circuit Judges.

PER CURIAM.

This case brought to us for review an order of the Subversive Activities Control Board declaring petitioner union to be a Communist-infiltrated organization within the meaning of Section 3 of the Subversive Activities Control Act of 1950, as amended by the Communist Control Act of 1954. A number of challenges to the order and the underlying statute, including some of a constitutional nature, were presented to us. After the case was taken under submission by us on January 15, 1964, we delayed our disposition of it because of the pendency in the Supreme Court of two other cases decided earlier by this court and involving Board orders under the Communist-front provisions of the same statute. On April 26, 1965, the Supreme Court, because of the staleness of the records upon which those orders were founded, vacated our judgments of affirmance of the Board in those cases and remanded them for further proceedings. American Committee for Protection of Foreign Born v. Subversive Activities Control Board, 380 U.S. 503, 85 S.Ct. 1148, 14 L.Ed.2d 39 (1965); and Veterans of Abraham Lincoln Brigade v. Subversive Activities Control Board, 380 U.S. 513, 85 S.Ct. 1153, 14 L.Ed.2d 46 (1965).[1]

We thereupon invited the parties to this appeal to comment upon the significance for it of the Supreme Court's action. Petitioner responded to the effect that the staleness principle was fully operative here, and urged that this case be similarly sent back to the Board for new consideration upon a fresher record. The Board thought it inappropriate to express a view on the application to be made of the two Supreme Court cases. The Department of Justice submitted a memorandum on behalf of the Attorney General in which, after noting that the Board's orders in both Communist-front and Communist-infiltrated cases operate prospectively,[2] it was stated that "the effect of the April 26 decisions seems to us to be to make it apparent that in case

1. Three kinds of organizations are differentiated in the Act—Communist-action, Communist-front, and Communist-infiltrated. Only one group has thus far been found by the Board to fall into the first category, and that is the Communist Party of the United States. Several organizations have been found to be Communist-front, but petitioner is the first to have been designated as Communist-infiltrated. Judge Prettyman, in his opinion for this court in *Abraham Lincoln Brigade*, characterized the difference between the latter two categories in this wise:

"In short, a Communist-front organization is controlled by the Communist Party; a Communist-infiltrated organization is controlled *not* by the Party but by an individual or individuals who render 'aid or support' to the Party." Veterans of Abraham Lincoln Brigade v. Subversive Activities Control Board, 117 U.S.App.D.C. 404, 408, 331 F.2d 64, 68 (1963).

The exact definition of "Communist-infiltrated" as set forth in section 7(a) of the statute is as follows:

"The term 'Communist-infiltrated organization' means any organization in the United States (other than a Communist-action organization or a Communist-front organization) which (A) is substantially directed, dominated, or controlled by an individual, or individuals who are, or who *within three years* have been actively engaged in, giving aid or support to a Communist-action organization, * * * and (B) is serving, or *within three years* has served, as a means for (i) the giving of aid or support to any such organization * * *."

Emphasis has been supplied in the foregoing quotation to the three-year period provision which is alluded to hereinafter and which does not obtain in the case of the other proscribed organizations.

2. The significance of this fact derives from the Supreme Court's statement in *American Committee* that "Since a registration order operates prospectively, it is apparent that reasonably current aid and control must be established to justify a registration order." 380 U.S. at 505, 85 S.Ct. at 1149. Although the Act does not impose any registration requirement upon a Communist-infiltrated organization, a Board order declaring this status does invoke certain sanctions and disabilities which begin to operate from the effective date of the order. The judicial review provisions of the Act defer that effective date until the conclusion of such review.

of review of an order of the Board, the record before this court should be 'reasonably current,' as far as that is possible in litigation."

The Department's memorandum went on to assert, however, that the record in this case is "reasonably current." For this proposition it relied principally upon the circumstance that there is another review proceeding pending in this court (No. 18,429) involving petitioner. This case results from petitioner's effort to seek a redetermination of its status fixed in the order immediately under review by means of a determination that it was "no longer a Communist-infiltrated organization." [3] The Department points out that hearings in this redetermination proceeding were held periodically from July 23, 1962 to July 2, 1963. The Board's order of December 20, 1963, dismissing the petition, is before this court in No. 18,429, awaiting the prescription of a briefing schedule agreed to begin after our disposition of No. 17,135. The Department urges that the record in the latter may be regarded as made "reasonably current" by that compiled in the redetermination proceeding; and it suggests that the two appeals be considered together.

Petitioner responded to the Department's proposal with a memorandum which challenges the adequacy or effectiveness of the redetermination record to accomplish the up-dating of the original record. It asserts that it is the original

determination of status which is critical, and that it is the Board, and not the court, which must make that determination afresh on the basis of a "reasonably current" record. It alludes to certain alleged differences in the issues and burdens of proof as they emerge in a redetermination proceeding, which cause Board action in that proceeding to fall short of the primary status determination on a reasonably current record contemplated by the Supreme Court.[4]

We are of the view that it would be judicially improvident, in the light of the Supreme Court's action in the *American Committee* and *Abraham Lincoln Brigade* cases, presently to review the order declaring petitioner to be a Communist-infiltrated organization. It is evident that the constitutional issues are to be approached with care and circumspection, and with the aid of a record as "reasonably current" as possible. A failure to do so not only jeopardizes our investment of time and effort but that of the Supreme Court as well, since it sits to examine whatever conclusions we might reach.

■ We think it perilous to assume that the record before us comports with reasonable standards of currency. This proceeding was initiated by the Attorney General on July 28, 1955. Hearings did not get under way until February 25, 1957, and continued intermittently until March 10, 1961. The examiner's recom-

---

3. Petitioner represents that it felt compelled to file the redetermination petition when it did because both it and the Board construed the statutory provision for redetermination, 50 U.S.C. § 792(a), (b), as requiring that the petition be filed within six months after the determination of Communist-infiltrated status.

4. After the decision by the Supreme Court on June 7, 1965, of United States v. Brown, 381 U.S. 437, 85 S.Ct. 1707, 14 L.Ed.2d 484 (1965), petitioner filed a further memorandum urging the applicability of that case to this and asserting that it dictated invalidation of the order presently before us for review. Petitioner asked that this appeal be set down for reargument in the light of *Brown, Ameri-*

*can Committee,* and *Abraham Lincoln Brigade.* These cases, and Brown in particular, may or may not represent, as petitioner claims, significant variations in the Supreme Court's thinking from Communist Party of United States v. Subversive Activities Control Board, 367 U.S. 1, 81 S.Ct. 1357, 6 L.Ed.2d 625 (1961). And see the grant of certiorari made in Albertson v. Subversive Activities Control Board, 118 U.S.App.D.C. 117, 332 F.2d 317 (1964), cert. granted, 381 U.S. 910, 85 S.Ct. 1529, 14 L.Ed.2d 432 (1965). In any event, these developments are not such as to minimize the constitutional issues, and, thus, it seems all the more important that these be framed against a reasonably current record.

mended decision was forthcoming December 26, 1961; and the Board's order was issued May 4, 1962. Although the hearings in this case ended much closer to the time of decision than was true in *American Committee* and *Abraham Lincoln Brigade,* this distinction is reduced in significance by a statutory feature peculiar to the Communist-infiltrated organization. This is the Congressional employment of the alternative three-year period as a basis of defining the tainted activity. It is clear from the Board's Report that it accepted the contention that "for purposes of this proceeding the three-year period is from July 28, 1952 to July 28, 1955. * * *" The Board went on immediately to say that "this does not mean that all evidence of events and occurrences before and after the period was automatically inadmissible"; and the Board thought to find confirmation of what happened in the three-year period in evidence of matters happening both before and after that period. But it seems fair to say that the foundation stone of the Board's order was laid in the events of 1952 to 1955; and, if this is so, we think it dangerous in the extreme to ignore the warnings of *American Committee* and *Abraham Lincoln Brigade.* We are also conscious of the stress laid by the Supreme Court "upon continuingly contemporaneous fact" in its consideration of the registration provisions of the Act in Communist Party of United States v. Subversive Activities Control Board, 367 U.S. 1, 87, 81 S.Ct. 1357, 6 L.Ed.2d 625 (1961).

Nor do we think that it is feasible, as suggested by the Department, to avoid the threat of staleness by our reviewing the status order in the light of the record made in the redetermination proceeding. It is the Board—and not this court—which must first determine status on a reasonably current record. Moreover, the issues in a redetermination proceeding are of a different order from those in a primary proceeding. In the one, the Attorney General is regarded as having the burden of proving the status. In the other, the Board looks upon the petitioner as having the burden of proving that the status no longer exists. It is apparently the Board's view that at least some evidence, admissible to prove that the status does not exist in the first instance, may not be receivable to show that the status has ended; and the status order itself appears to be accorded independent evidentiary force in combating the claim that the status has terminated. These disparities in the nature of the two proceedings, and in the rules observed with respect to the reception and treatment of evidence, cause us to conclude that the original record underlying the status order cannot be regarded as rendered "reasonably current" by the expedient of merging it with the later redetermination record. As did the Supreme Court in *American Committee* and *Abraham Lincoln Brigade,* so do we conclude that judicial review should await a record of greater currency than the one before us.

Accordingly, this case is remanded to the Board for further proceedings consistent herewith. And, in the light of this remand, we see no purpose to be served by allowing No. 18429 to remain on our docket. Since the question of petitioner's status is to be considered anew by the Board in the light of a reasonably current record, it will be time enough for redetermination to be sought if and when the Board again declares petitioner to be Communist-infiltrated. Because it may be claimed that the record in No. 18429 has relevance or utility in the future Board proceedings pursuant to this remand, we remand that case also.

It is so ordered.

WILBUR K. MILLER, Senior Circuit Judge, dissents.