## AMERICAN COMMITTEE FOR PROTECTION OF FOREIGN BORN *v.* SUBVERSIVE ACTIVITIES CONTROL BOARD.

No. 44. Argued December 8–9, 1964.—Decided April 26, 1965.

*Joseph Forer* argued the cause for petitioner. With him on the briefs was *David Rein.*

*Bruce J. Terris* argued the cause for respondent. With him on the brief were *Solicitor General Cox, Assistant Attorney General Yeagley, Kevin T. Maroney, George B. Searls* and *Doris H. Spangenburg.*

*Melvin L. Wulf* and *Marvin M. Karpatkin* filed a brief for the American Civil Liberties Union, as *amicus curiae,* urging reversal.

PER CURIAM.

The Court of Appeals for the District of Columbia Circuit affirmed an order of the Subversive Activities Control Board requiring that the petitioner register as a "Communist-front" organization under § 7 of the Subversive Activities Control Act of 1950, as amended, 64 Stat. 993, 50 U. S. C. § 786 (1958 ed.). 117 U. S. App. D. C. 393, 331 F. 2d 53. We granted certiorari. 377 U. S. 915.

Under the statute, a determination that an organization is a Communist front must rest on findings that it "(A) is substantially directed, dominated, or controlled by a Communist-action organization, and (B) is primarily operated for the purpose of giving aid and support to a Communist-action organization . . . ." § 3 (4), 64 Stat. 989, 50 U. S. C. § 782 (4) (1958 ed.). In *Communist Party of the United States* v. *Subversive Activities Control Board,* 367 U. S. 1, this Court sustained the Board's determination that the Communist Party is a "Communist-action organization" within the meaning of § 3 (3) of the Act; in doing so, the Court upheld the registration requirement against First Amendment attack and found an objection based on the Fifth Amendment privilege against self-incrimination not ripe for decision.

In the present case the Board's findings that petitioner is a "Communist front" were based primarily upon evidence taken at a hearing which was concluded in 1955. The findings which support the conclusion that the petitioner is controlled by and primarily operated for the purpose of giving aid and support to the Communist Party rest in substantial measure upon evidence of the activities of Abner Green, found to be a Party member expressly assigned in 1941 to be petitioner's executive secretary. Green died in 1959. The Board's order was filed on June 27, 1960, but the record discloses no findings or evidence concerning petitioner's activities after Green's death.[1] In the circumstances we think that the record

---

[1] Petitioner raised the point when, on February 11, 1960, the Board heard oral argument on the sufficiency of the evidence. At that time, petitioner's counsel urged as an independent reason for "throwing out this case" that "[t]his case is stale and you ought to throw it out because you can't enter an order under the Act. . . . [The Attorney General] talks about what a devil Abner Green was, or Harriet Barron, the two people he said ran the organization. Well, the fact is that it has been years since Harriet Barron has had any connection with the [petitioner], and Abner Green to my great sor-

should be brought up to date to take account of supervening events. Since a registration order operates prospectively, it is apparent that reasonably current aid and control must be established to justify a registration order. Our *Communist Party* decision on the Communist-action provisions did not necessarily foreclose petitioner's constitutional questions bearing on the Communist-front provisions.[2] Since petitioner's current status is not clear on this record, decision of the serious constitutional questions raised by the order is neither necessary nor appropriate.

---

row is now dead. Things have changed, and times have changed . . . you can't conscientiously enter an order in the present in view of the terrific amount of time that has passed and the changes in time. . . ." XVIII Transcript 7492–7493. The Board made no mention of this argument in its report.

[2] That the issues are not plainly foreclosed is illustrated by President Truman's veto message:

"Insofar as the bill would require registration by the Communist Party itself, it does not endanger our traditional liberties. However, the application of the registration requirements to so-called Communist-front organizations can be the greatest danger to freedom of speech, press and assembly, since the alien and sedition laws of 1798. This danger arises out of the criteria or standards to be applied in determining whether an organization is a Communist-front organization.

"[T]he bill would permit such a determination to be based solely upon 'the extent to which the positions taken or advanced by it from time to time on matters of policy do not deviate from those' of the Communist movement.

"This provision could easily be used to classify as a Communist-front organization any organization which is advocating a single policy or objective which is also being urged by the Communist Party or by a Communist foreign government. . . . Thus, an organization which advocates low-cost housing for sincere humanitarian reasons might be classified as a Communist-front organization because the Communists regularly exploit slum conditions as one of their fifth-column techniques." H. R. Doc. No. 708, 81st Cong., 2d Sess., p. 6. See also Note, 74 Yale L. J. 738 (1965).

The judgment of the Court of Appeals is vacated, and the cause remanded for proceedings consistent with this opinion. *It is so ordered.*

MR. JUSTICE WHITE took no part in the decision of this case.

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE BLACK and MR. JUSTICE HARLAN concur, dissenting.

I dissent from the refusal of the Court to face up to the important constitutional questions squarely presented by this case. The Court's excuse is that Abner Green, the executive secretary, who was prominent in petitioner's affairs, died after the close of the hearings.[1]

---

[1] The Attorney General began the present proceeding in 1953 for an order requiring the petitioner to register as a Communist-front organization, alleging that the petitioner was controlled by the Communist Party. (Immediately prior to the commencement of this proceeding the Board had issued its report of April 20, 1953, finding the Party to be a Communist-action organization.) Hearings were had before an examiner and concluded sometime in 1956. The examiner's recommended decision was issued on September 10, 1957. While the Board had the case under advisement, the second remand in the Communist Party litigation occurred. (The history of this litigation is set out in full in *Communist Party* v. *Control Board,* 367 U. S. 1, at 19–22.) It was therefore necessary to postpone action in the present case because petitioner here was alleged to be a front for the Communist Party, and the provisions of the Act would not come into play as to petitioner unless the Party were proved to be a Communist-action organization—which was of course the purpose of the Communist Party litigation.

In 1959, after the Board's second modified report in the Communist Party proceeding, the Board reactivated this case and ordered the Attorney General to make available to petitioner certain documents which intervening judicial decisions had suggested were producible. Further proceedings were had in this connection; further oral argument was presented to the Board; and the Board's report and order were filed on June 27, 1960.

On appeal the Court of Appeals on January 8, 1962, remanded the case to the Board to allow petitioner to introduce evidence of alleged

Petitioner has never, so far as appears, alleged any facts indicating that with the death of Abner Green the nature of the Committee underwent any significant change. Yet this suggestion could have been made to the Board prior to its decision; and it could have been made to the Court of Appeals, for the Act in § 14 (a) specifically provides: "If either party shall apply to the court for leave to adduce additional evidence, and shall show to the satisfaction of the court that such additional evidence is material, the court may order such additional evidence to be taken before the Board and to be adduced upon the proceeding in such manner and upon such terms and conditions as to the court may seem proper." [2]

In determining that petitioner was a Communist-front organization, the Board was directed by the Act to consider other evidence in addition to evidence that petitioner's executive secretary was a member of the Communist Party. Section 13 (f) sets forth four different categories of evidence which must be considered by the Board in deciding whether an organization is a front: (1) the extent to which those who are active in the direction of the alleged front are also active in a Communist-

perjured testimony. On March 8, 1962, the Board reaffirmed its earlier order. On December 17, 1963, the Court of Appeals affirmed the Board's order. We granted certiorari on April 27, 1964.

[2] On oral argument before the Board on February 11, 1960, counsel for the petitioner did argue in a general way that the case was "stale" simply as the result of the "passage of time." In the course of this argument counsel observed that "Abner Green to my great sorrow is now dead. Things have changed, and times have changed. Standards have changed, and everybody has changed, I think, but the Department of Justice . . . ." This passing reference to Green's death falls far short of a serious effort to show that petitioner was a legally different entity after Green's death: for example, petitioner made no effort to reopen the record for evidence concerning Green's successor, any new policies now in effect, or the·like. And, as noted, no effort was made in the Court of Appeals to have the case remanded for the taking of new evidence.

action organization; (2) the extent to which financial or other support is derived from a Communist-action organization; (3) the extent to which the alleged front's funds and personnel are used to promote the objectives of a Communist-action organization; and (4) the extent to which the alleged front's positions on matters of policy do not deviate from the Communist line. Evidence in all four of these categories was adduced.

The Court takes a peculiar view of the evidence when it surmises that the death of petitioner's executive secretary may suddenly have changed the nature of the organization. It forgets what the Court said in the *Communist Party* case: "Where the current character of an organization and the nature of its connections with others is at issue, of course past conduct is pertinent. Institutions, like other organisms, are predominantly what their past has made them. History provides the illuminating context within which the implications of present conduct may be known." 367 U. S. 1, 69.[3]

The Board found that the petitioner had existed in the United States since 1932 or 1933 and that it was eight or nine years later that Green became its executive secretary. The evidence before the Board established that Green was the "top functionary" of petitioner's national organiza-

---

[3] In that case the Court of Appeals observed:

"[I]t is rarely, if ever, possible to prove present nature by some instantaneous, contemporaneous fact, totally ignoring the whole of the past. Not only is the past clearly pertinent, it may be quite material to a determination of present nature. Whether it is material depends upon whether there is affirmative evidence of a departure from the established past. In the ordinary affairs of life and in ordinary litigation, if a person or an organization is shown to have had over many years a certain policy and program, and no more is shown, the conclusion is clearly indicated that he or it has the same policy and program in the present." 96 U. S. App. D. C. 66, 105, 223 F. 2d 531, 570.

tion and that he was the "most influential official" therein, but he was not the only top official who was found to be a member of the Communist Party. The number two person in the national organization was Harriet Barron, the administrative secretary, who with Green carried on the organization's day-to-day activities. She was found to have been a member of the Communist Party at the time of the hearings and for a number of years prior thereto.

A great deal of the evidence heard by the Board related to the local branches of the petitioner. The Board found: "The management, direction, and supervision of the branches (local committees) have been by Communist Party members such as Ruth Hillsgrove for the New England Committee; Evelyn Abelson and Bess Steinberg for the Western Pennsylvania Committee; Saul Grossman for the Michigan Committee; Marion Kinney for the Northwest Committee; and Delphine Smith for the Los Angeles Committee." This evidence establishes that the petitioner cannot possibly be regarded as a one-man organization. It is true that Green was the leader of the national organization in New York and that he appeared at some meetings of the local committees. But the nature and existence of these local committees, which the Board regarded as "part of" the national organization, indicate clearly that the organization had an existence above and beyond Green himself.

In this regard the genesis of the Northwest Committee is instructive. The Board found that the organization of this branch resulted from discussions in Communist Party meetings in Seattle about the need for a local branch of the American Committee to defend Party members. This was in 1949 when the Party designated member Kinney to head this organization. Green was not present at the meetings which led to the formation of this

branch, and seems to have had little, if any, part in it. The first mention of Green in connection with this branch seems to be the testimony that in 1952 he made a speech at a meeting that was in some way connected with the activities of the local committee.

The ultimate finding of the Board as to these local organizations was: "We find on the entire record that the American Committee and the various area or local committees are *associated together for joint action* on particular subjects. Together they constitute a voluntary association and one organization within the meaning of the term 'organization' set forth in section 3 (2) of the statute." (Emphasis supplied.) One simply cannot read the record and come to the conclusion that this congeries of individual organizations, loosely united under the aegis of the national committee, was merely Green's *alter ego* and would therefore change upon his death.

A Communist-front organization is one which is controlled by a Communist-action organization *and* which is primarily operated for the purpose of giving aid and support to Communism. To prove this latter part of the definition the Attorney General introduced before the Board evidence showing that the Committee engaged in the legal defense of Party members who were defendants in deportation and denaturalization proceedings. Much of this evidence appears to have concerned the activities of the *local committees.* The Board found, for example, that "the cases of Joe Weber, Refugio Ramon Martinez, and James MacKay [were] handled by the Midwest Committee; the Mexican deportees and a group referred to as the Terminal Island Four [were] handled by the Los Angeles Committee; and the Giacomo Quattrone-Ponzi case [was] handled by the New England Committee." There is no reason to believe that this work of the local committees has been discontinued because of Green's death.

The case is very much alive; and the record is by no means stale. We should face up to the serious issues presented and in no way affected by Abner Green's death.

Mr. Justice Black, dissenting.†

While I have joined the dissents of Mr. Justice Douglas from the Court's action in remanding these cases without deciding the important constitutional questions involved, I have additional reasons for objecting to the remands. In *Communist Party* v. *Subversive Activities Control Board,* 367 U. S. 1, 137 (dissenting opinion), I stated at some length my reasons for believing that the Subversive Activities Control Act of 1950, as amended, 64 Stat. 987, 50 U. S. C. §§ 781–826 (1958 ed.), on which the Government's case here rests, violates a number of provisions of our Constitution and Bill of Rights in many respects. See also *Aptheker* v. *Secretary of State,* 378 U. S. 500, 517 (concurring opinion). I think that among other things the Act is a bill of attainder; that it imposes cruel, unusual and savage punishments for thought, speech, writing, petition and assembly; and that it stigmatizes people for their beliefs, associations and views about politics, law, and government. The Act has borrowed the worst features of old laws intended to put shackles on the minds and bodies of men, to make them confess to crime, to make them miserable while in this country, and to make it a crime even to attempt to get out of it.* It is difficult to find laws more thought-stifling

---

†[This opinion applies also to No. 65, *Veterans of the Abraham Lincoln Brigade* v. *Subversive Activities Control Board, post,* p. 513.]

*In *Aptheker* v. *Secretary of State,* 378 U. S. 500, this Court held unconstitutional on its face the whole of § 6 of the Subversive Activities Control Act of 1950, as amended, 64 Stat. 993, 50 U. S. C. § 785 (1958 ed.), which made it unlawful for any member of an organization registered under the Act "to make application for a passport . . . or . . . to use or attempt to use any such passport."

than this one even in countries considered the most benighted. Previous efforts to have this Court pass on the constitutionality of the various provisions of this freedom-crushing law have met with frustration on one excuse or another. I protest against following this course again. My vote is to hear the case now and hold the law to be what I think it is—a wholesale denial of what I believe to be the constitutional heritage of every freedom-loving American.