# W. E. B. DuBOIS CLUBS OF AMERICA et al. v. CLARK, ATTORNEY GENERAL, et al.

No. 515.   Decided December 11, 1967.

*William M. Kunstler, Arthur Kinoy, Melvin L. Wulf, David Rein, Monroe H. Freedman* and *Floyd McKissick* for appellants.

*Acting Solicitor General Spritzer, Assistant Attorney General Yeagley, Kevin T. Maroney, George B. Searls* and *Lee B. Anderson* for appellees.

Per Curiam.

On March 4, 1966, the Attorney General petitioned the Subversive Activities Control Board for an order, after appropriate hearings, requiring the W. E. B. DuBois Clubs of America to register with the Attorney General as a Communist-front organization.[1]   On April 26, 1966,

---

[1] The term "Communist-front organization" is defined in § 3 (4) of the Internal Security Act of 1950, 64 Stat. 989, 50 U. S. C.

before hearings were held, appellants attempted to bypass the Board by suing in the District Court.[2] Appellants' complaint in the District Court alleged that the Communist-front registration provisions of the Act were unconstitutional.[3] The complaint also alleged that the "very pendency of these administrative proceedings . . . has resulted and will continue to result . . . in immediate and irreparable injury to fundamental constitutional rights . . . ." Appellants asked the District

§ 782 (4). Communist-front organizations are required to register with the Attorney General. 50 U. S. C. § 786. When a Communist-front organization does not register, the Attorney General may petition the SACB for an order requiring registration. 50 U. S. C. § 792.

[2] On April 27, 1966, appellants also filed with the Board a motion to dismiss the Attorney General's petition. The Board denied this motion and, subsequently, on August 18, 1966, appellants filed an answer to the Attorney General's petition. According to the District Court, the DuBois Clubs "(1) denied generally that it was a Communist-front organization within the meaning of the Act, and (2) denied various allegations of fact made by the Attorney General in the petition."

[3] Appellants attacked the provisions, 50 U. S. C. §§ 786 (b), (c), and (d), "on their face and as applied" as violations of Art. I, § 9, cl. 3, Art. III, and the First, Fifth, Eighth, Ninth, Tenth, Thirteenth, Fourteenth, and Fifteenth Amendments of the Constitution. Although the Communist-front provisions have been upheld by the District of Columbia Circuit, *American Committee for Protection of Foreign Born* v. *SACB*, 117 U. S. App. D. C. 393, 401, 331 F. 2d 53, 61 (1963), reversed on other grounds, 380 U. S. 503 (1965); *Veterans of the Abraham Lincoln Brigade* v. *SACB*, 117 U. S. App. D. C. 404, 413, 331 F. 2d 64, 73 (1963), reversed on other grounds, 380 U. S. 513 (1965); *Weinstock* v. *SACB*, 118 U. S. App. D. C. 1, 331 F. 2d 75 (1963); *Jefferson School of Social Science* v. *SACB*, 118 U. S. App. D. C. 2, 331 F. 2d 76 (1963), their constitutionality has not been specifically determined by this Court. *American Committee for Protection of Foreign Born* v. *SACB*, 380 U. S. 503 (1965); *Veterans of the Abraham Lincoln Brigade* v. *SACB*, 380 U. S. 513 (1965). Cf. *Aptheker* v. *Secretary of State*, 378 U. S. 500 (1964).

Court for an order declaring the Communist-front registration provisions unconstitutional and also for an order enjoining the Attorney General and the SACB from enforcing them. A three-judge District Court, convened on appellants' motion, dismissed the complaint because appellants had failed to exhaust their administrative remedies.[4] This appeal followed.

Before there may be proceedings to punish appellants for failure to register with the Attorney General, the SACB must first find that the DuBois Clubs is a Communist-front organization and issue an order to that effect.[5] The Act provides for a full evidentiary hearing which is to be held in public. Appellants may be represented by counsel, offer oral or documentary evidence, submit rebuttal evidence, and conduct cross-examination. The SACB must make a written report and state its finding of fact. If appellants are aggrieved by the Board's order, they may obtain review in the United States Court of Appeals for the District of Columbia Circuit which may set aside the order if it is not "supported by the preponderance of the evidence." [6] Upon motion of a party, the Court of Appeals may order the Board to take additional evidence. Of course, if the Board and the Court of Appeals find that the Act does cover appellants, they may challenge its constitutionality either as applied or on its face. Judgments of the Court of Appeals are reviewable by this Court on certiorari.[7]

It is evident that Congress has provided a way for appellants to raise their constitutional claims. But appellants, denying that they are within the coverage

---

[4] However, the District Court did stay further Board proceedings pending this Court's disposition of the case.

[5] 50 U. S. C. § 794 (a).

[6] See *National Council of American-Soviet Friendship* v. *SACB*, 116 U. S. App. D. C. 162, 322 F. 2d 375 (1963).

[7] See 50 U. S. C. §§ 792 (d), (g), 793 (a).

of the Act, wish to litigate these claims in an injunctive proceeding in the District Court. The effect would be that important and difficult constitutional issues would be decided devoid of factual context and before it was clear that appellants were covered by the Act.[8] We have previously refused to decide the constitutionality of the very provisions involved here because it was not clear that the Act would be applied to the objecting parties. *American Committee for Protection of Foreign Born* v. *SACB,* 380 U. S. 503, *Veterans of the Abraham Lincoln Brigade* v. *SACB,* 380 U. S. 513. Similarly, the District Court should not be forced to decide these constitutional questions in a vacuum.

Appellants rely on *Dombrowski* v. *Pfister,* 380 U. S. 479 (1965), to support their contention that the usual rule requiring exhaustion of administrative remedies [9] should not apply in this case. In *Dombrowski,* however, the constitutional issues were presented in a factual context. Upon a record demonstrating a history of harassment of appellants in connection with their exercise of First Amendment rights, the Court ordered a federal district court to issue an injunction against pending criminal prosecutions under state statutes. This Court held the statutes "void on their face," and it concluded that, in the circumstances of that case, if appellants were required to submit to a criminal prosecution, the injury to First Amendment freedoms which had already taken place would be compounded. Accordingly,

---

[8] Cf. *Rescue Army* v. *Municipal Court,* 331 U. S. 549, 568–585 (1947).

[9] See, *e. g., Myers* v. *Bethlehem Shipbuilding Corp.,* 303 U. S. 41, 50–51 (1938); *Macauley* v. *Waterman S. S. Corp.,* 327 U. S. 540, 543–545 (1946); *Aircraft & Diesel Corp.* v. *Hirsch,* 331 U. S. 752, 771–774 (1947); *Allen* v. *Grand Cent. Aircraft Co.,* 347 U. S. 535, 553 (1954); *Boire* v. *Greyhound Corp.,* 376 U. S. 473, 481–482 (1964).

the Court allowed appellants to assert their claims in an equitable proceeding.

In this case, the complaint and the affidavits constitute no more than conclusory allegations that the purpose of the threatened enforcement of the Act was to "harass" appellants and that harassment was the intended result of the Attorney General's announcement that he had filed a petition with the SACB. Further, appellants are not being forced to assert their claims in a criminal prosecution. As the court below made clear, "Congress has made careful provision that no tangible sanctions can come into play until the facts have been explored in open hearing [before the Board] and the courts have scrutinized what they show, both in their adequacy to support a registration order and in their constitutional impact upon the statute itself." [10]   In the context of this case, we decline to require the court below to permit substitution of an injunctive proceeding for the civil proceeding which Congress has specifically provided.

The motion to affirm is granted and the judgment is affirmed. *Affirmed.*

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE BLACK concurs, dissenting.

I believe that the provisions of the Act now challenged are void on their face, that there are no factual issues to be resolved which should condition the outcome of the litigation, and that therefore there is no reason for the lower court to abstain from exercising its jurisdiction.

The statute defines "Communist-front organization" as one which is substantially directed, dominated, or controlled by a Communist-action organization and which is primarily operated for the purpose of giving

[10] See 50 U. S. C. §§ 793 (b), 794.

aid and support to a Communist-action organization, a Communist foreign government, or the world Communist movement. 50 U. S. C. § 782 (4). A Communist-front organization, as defined, is not a group engaged in *action* but in *advocacy;* or if *action* is included, so is advocacy, for § 781 (15) in describing the growth of the Communist movement speaks of those who seek "converts far and wide by an extensive system of schooling and indoctrination."

Legislation curbing or penalizing *advocacy* even of ideas we despise is, I submit, at war with the First Amendment. Under our Constitution one's belief or ideology is of no concern to government. One can think as he likes, embrace any philosophy he chooses, and select the politics that best fits his ideals or needs. That is all implicit in the First Amendment rights of assembly, petition, and expression. Those rights merely enforce, protect, or sanction the beliefs or ideology to which one is committed. So does the right of association which we have said over and again to be part and parcel of those First Amendment rights. Basic in this scheme of values is the immunity of beliefs, ideas, and ideology from government inquiry, probing, or surveillance.[1]

Jefferson expressed the American constitutional theory:

"[T]he opinions of men are not the object of civil government, nor under its jurisdiction . . . . [I]t

---

[1] Hannah Arendt writes:

"The word 'people' retained for them [the Founding Fathers] the meaning of manyness, of the endless variety of a multitude whose majesty resided in its very plurality. Opposition to public opinion, namely to the potential unanimity of all, was therefore one of the many things upon which the men of the American Revolution were in complete agreement; they knew that the public realm in a republic was constituted by an exchange of opinion between equals, and that this realm would simply disappear the very moment an exchange became superfluous because all equals happened to be of the same opinion." On Revolution 88–89 (1963).

is time enough for the rightful purposes of civil government for its officers to interfere when principles break out into overt acts against peace and good order . . . ." Jefferson, A Bill For Establishing Religious Freedom, in The Jeffersonian Cyclopedia 976 (1900).

That is my reading of the First Amendment. Those who can be officially pilloried or punished for having a particular philosophic or political creed are effectively deterred from exercising First Amendment rights.

I see no constitutional method whereby the Government can punish or penalize one for "being a Communist" or "supporting Communists" or "promoting communism." Communism, as an ideology, embraces a broad array of ideas. To some it has appeal because the state owns the main means of production, with the result that all phases of national life are in the public sector, guaranteeing full employment. To some communism means a medical care program that reaches to the lowest levels of society. To others the communal way of life, even in agriculture, means a fuller life for the average person. To some the flowering of the dance, music, painting, sculpture, and even athletics is possible only when those arts and activities move from the private to the public sector. To some there can be no equivalent of the unemployment insurance, old age insurance, and social security that obtain in a socialized state. To others communism is a commitment to the atheistic philosophy and way of life. To still others, adherence to communism means a commitment to use force and violence, if necessary, to achieve that kind of socialist state. And to some of course it means all of the projects I have enumerated plus perhaps others as well.

The word "revolution" has of course acquired a subversive connotation in modern times. But it has roots that

are eminently respectable in American history.[2]  This
country is the product of revolution.  Our very being em-
phasizes that when grievances pile high and there are
no political remedies, the exercise of sovereign powers
reverts to the people.  Teaching and espousing revolu-
tion—as distinguished from indulging in overt acts—
are therefore obviously within the range of the First
Amendment.

*Dennis* v. *United States,* 341 U. S. 494, decided in 1951
at the peak of the notorious "witch hunt" in this Nation,
is to the contrary.  My Brother BLACK and I, the only
remaining members of the Court who sat in that case,
dissented.  The crime charged and sustained was a con-
spiracy to teach and advocate the Marxist creed, includ-
ing the overthrow of the Government by force or violence.
*Id.,* at 497.  No overt acts designed to overthrow the
Government were charged; no attempt to overthrow was
charged.  The crime was an agreement to teach, advocate,
and espouse a creed that was and is noxious to most
Americans.

I cannot believe that *Dennis* has any continuing vital-
ity.  It is out of line with *Terminiello* v. *Chicago,* 337
U. S. 1, where a fascist was held to be protected by the
First Amendment for espousing his creed, which most
Americans find as obnoxious as communism.

---

[2] "America had become the symbol of a society without poverty
long before the modern age in its unique technological development
had actually discovered the means to abolish that abject misery of
sheer want which had always been held to be eternal.  And only
after this had happened and had become known to European man-
kind could the social question and the rebellion of the poor come
to play a truly revolutionary role.  The ancient cycle of sempiternal
recurrences had been based upon an assumedly 'natural' distinction
of rich and poor; the factual existence of American society prior to
the outbreak of the Revolution had broken this cycle once and for
all."  H. Arendt, On Revolution 15–16 (1963).

It is not conceivable that the Court that decided *Dombrowski* v. *Pfister,* 380 U. S. 479, would approve *Dennis.* In *Dombrowski* a state prosecution for subversion was enjoined. The people prosecuted were fostering civil rights for Negroes in the South. While it would have been possible to win the state case on constitutional grounds, the Court held that the trial itself would result in irreparable injury. We said:

> "Because of the sensitive nature of constitutionally protected expression, we have not required that all of those subject to overbroad regulations risk prosecution to test their rights. For free expression—of transcendent value to all society, and not merely to those exercising their rights—might be the loser." *Id.,* at 486.

A Communist-front organization under the present Act is a group promoting the world Communist movement. See 50 U. S. C. § 782 (4). If it were defined as a group which, for example, collected arms for the violent overthrow of government, the case would be free of First Amendment problems. But here as in *Dombrowski* the statute is overbroad, bringing within its scope advocacy, espousal, and teaching of a creed or of causes for which the Communist movement stands.

If an organization is classified a Communist front, serious consequences follow: employment of its members is restricted, § 784; application for or use of passports is made illegal, § 785; registration is required, § 786; use of the mails and of the radio and TV is curtailed, § 789; tax exemptions are denied, § 790. At least some of these provisions are unconstitutional under our decisions as bills of attainder or as a denial of First and Fifth Amendment rights. Yet vindication would come only after long and protracted hearings and appeals. Meanwhile there would be a profound "chilling" effect on the exercise of

First Amendment rights [3] within the principle of *Dombrowski* v. *Pfister*.

The members of the DuBois Clubs may or may not be Communists. But as I said, I see no possibility under our Constitution of penalizing one for holding or expressing that or any other belief. The DuBois Clubs may advocate causes that parallel Communist thought or Communist policies.[4] They appear, for example, to advocate the termination of the hostilities in Vietnam. But *so far as advocacy is concerned,* I see no constitutional way of putting restraints on them so long as we have the First Amendment.

Harassing them by public hearings and by probing into their beliefs and attitudes, pillorying them for their minority views by exposing them to the hearings under the Act—these actions will have the same "chilling" effect as the Court held the trial in *Dombrowski* would have had.

First Amendment values ride on what we do today. If government can investigate ideas, beliefs, and advocacy at the left end of the spectrum, I see no reason why it may not investigate at any other part of the spectrum. Yet as I read the Constitution, one of its essential purposes was to take government off the backs of people and keep it off. There is the line between action on the one hand and ideas, beliefs, and advocacy on the other. The former is a legitimate sphere for legis-

---

[3] No such question was presented in *American Committee for Protection of Foreign Born* v. *SACB,* 380 U. S. 503, and *Veterans of the Abraham Lincoln Brigade* v. *SACB,* 380 U. S. 513. Those cases were reviews of the actions of the Board and did not involve the present question, whether it is necessary to exhaust administrative remedies as a prerequisite to challenging the Act as being invalid on its face.

[4] On the vices of parallelism see *United States* v. *Lattimore,* 127 F. Supp. 405 (D. C. D. C.), aff'd by equally divided court, 98 U. S. App. D. C. 77, 232 F. 2d 334 (*en banc*).

lation. Ideas, beliefs, and advocacy are beyond the reach of committees, agencies, Congress, and the courts.

MR. JUSTICE BLACK and I adhere to the views we expressed in the other cases we have had under this Act (see, *e. g., Communist Party* v. *SACB,* 367 U. S. 1, 137, 169; *Aptheker* v. *Secretary of State,* 378 U. S. 500, 517, 519; *American Committee* v. *SACB,* 380 U. S. 503, 506, 511; *Brigade Veterans* v. *SACB,* 380 U. S. 513, 514) and would reverse the judgment below.