**UNITED STATES of America**

**v.**

**Valentine GREEN, Katherine Czarnik, Patricia Ann Kennedy, Jill Boskey, Linda Forest and Barbara Webster, Defendants.**

**No. M 18–65.**

United States District Court
S. D. New York.
Sept. 26, 1969.

Robert M. Morgenthau, U. S. Atty., John F. Pollard, Asst. U. S. Atty., New York City, for plaintiff.

Frederick B. Boyden, New York City, for defendants Green, Czarnik, Kennedy and Boskey.

William M. Kunstler, and Edward Carl Broege, Jr., New York City, Law Center for Constitutional Rights, for defendants Forest and Webster.

MOTLEY, District Judge.

*Statement of Facts*

On July 3, 1969, defendants were observed at an outdoor rally at Rockefeller

Plaza throwing alleged records of the Selective Service System in the air. A complaint was filed on that day before the United States Commissioner for the Southern District of New York, charging all six defendants with a very serious offense, in that they

> "unlawfully, wilfully and knowingly did receive, conceal and retain without authority records of a department and agency of the United States, to wit, Local Boards 5 through 17 of the Selective Service System located at 321 West 44th Street, New York knowing the said records to be stolen, with intent to convert them to their own use,"

in violation of 18 U.S.C.A. §§ 2, 641. [Complaint of Thomas J. O'Toole, Special Agent, Federal Bureau of Investigation]. If convicted of this offense, the defendants may possibly be fined $10,-000 or be imprisoned for ten years. 18 U.S.C.A. § 641.

Each was held in custody on $2,500 bail. Defendants Forest and Webster posted bail and were released on July 5, 1969, and the others similarly were set free on July 7, 1969. At that time, the government consented to extensions of bail limits with respect to all defendants, including, severally, extensions from New Jersey to California. The Commissioner cancelled all bail on September 9, 1969; he ordered defendants Forest and Webster continued in their own recognizance, and permitted them to travel throughout the continental United States.

The Commissioner scheduled a preliminary examination for all defendants to be held on July 8, 1969. This was adjourned by agreement of all counsel until July 22, 1969. Subsequently, the government requested, and was granted, postponements on four occasions: July 22, August 7, August 19, and September 9, 1969. The final adjournment secured by the government was until September 30, 1969, the day after the government's proposed grand jury investigation of the defendants.

Counsel for defendants Forest and Webster opposed all adjournments of the preliminary examination subsequent to July 22, 1969. Counsel for defendants Green, Czarnik, Kennedy, and Boskey consented to all adjournments up until September 9, 1969.

Only defendants Czarnik, Boskey, Forest, and Webster appeared in person at the scheduled preliminary examination on September 9, 1969. Defendants Kennedy and Green were represented by counsel. The four defendants who appeared in person on September 9, 1969 were there served with subpoenas ordering them to appear before a grand jury of the Southern District of New York, in regard to an alleged violation of 50 App. U.S.C.A. § 462, on September 29, 1969.

Service of the subpoenas occurred "immediately prior to the beginning of the soon aborted proceeding," [Defs' Memorandum In Support of Application That Subpoenas Be Quashed, p. 1], apparently "outside the courtroom, presided over by the United States Commissioner." [Government's Affidavit in Opposition, p. 5].

All six defendants moved by order to show cause dated September 12, 1969 and signed by Hon. Marvin E. Frankel, United States District Judge, to dismiss the complaints against them because of unreasonable delay in affording them an opportunity for a preliminary examination pursuant to Rule 5(c) Federal Rules of Criminal Procedure, or, in the alternative, 18 U.S.C.A. § 3060 (1969). Defendants Czarnik, Boskey, Forest, and Webster also moved by the same order to show cause to quash the grand jury subpoenas, on several grounds: that they were immune to service of the subpoenas under the rule of Lamb v. Schmitt, 285 U.S. 222, 52 S.Ct. 317, 76 L.Ed. 720 (1932); that the service of the subpoenas placed an intolerable burden on their "privilege" of having a preliminary examination; and that the gov-

ernment has used the subpoenas to harass the defendants and that the subpoenas have consequently had a "chilling" effect on their exercise of First Amendment rights of political expression, as discussed in Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

We turn first to the question of the validity of the service of the grand jury subpoenas upon four of the defendants.

### The Service of the Subpoenas

In *Lamb,* an attorney who was a resident of Illinois, was served with process in Mississippi in a related civil suit to the one in which he was initially appearing. The Court denied him immunity from service of process because the second suit was intimately connected with the first, at the same time endorsing

"[t]he general rule that witnesses, suitors, and their attorneys, while in attendance in connection with the conduct of one suit are immune from service of process in another, * * *." 285 U.S. at 225, 52 S.Ct. at 318.

The Court also spoke of the genesis of the rule of immunity as arising from the solicitude for "the voluntary attendance of those whose presence is necessary or convenient to the judicial administration in the pending litigation." 285 U.S. at 225, 52 S.Ct. at 318. See also In re Equitable Plan Company, 277 F.2d 319, 320 (2 Cir.1960) (Friendly, J.). In doing so, it was considering the fear that out-of-state counsel might have of being served with process in a foreign jurisdiction. The rule of immunity was seen as generally applicable to persons ordinarily without the jurisdiction of a court, and, therefore, necessarily not amenable to its service of process, who appeared within that jurisdiction solely with respect to the cause there already underway. Such persons were viewed as giving up the "safety" of one jurisdiction to serve the interests of justice, and

their natural state of immunity was held to be generally respected.

■ However, defendants can claim affinity neither with the facts of *Lamb* nor its logical and judicial extensions, in support of the allegation that their "right" to a preliminary examination is eroded in this instance by the fear of being compelled to testify before the grand jury. They assert that they might not voluntarily attend the examination armed with the knowledge of possible liability to service of the subpoenas. But the service of process of the grand jury is nationwide, Rule 17(e) (1), Federal Rules of Criminal Procedure, and defendants could have been validly served with the subpoenas in question anywhere in the United States. Cf. United States v. Aronson, 319 F.2d 48, 52 (2 Cir.1963), cert denied 375 U.S. 920, 84 S.Ct. 264, 11 L.Ed.2d 164 (1963), rehearing denied, 375 U.S. 982, 84 S.Ct. 477, 11 L.Ed.2d 428 (1964). Thus, defendants' "fear" of attendance at the preliminary examination is not at all analogous to any deterrent to court attendance operating with respect to suitors in a case like *Lamb*. Here, there is *no* jurisdiction in which petitioners could have avoided service of process as an original matter, because their conditions of bail restricted their travel to the continental United States.

The Supreme Court in *Lamb* also stressed the integrity of the judicial process, not the convenience of the parties, in deciding when and where to confer immunity from service of process.

"The test is whether the immunity itself, if allowed, would so obstruct judicial administration in the very cause for the protection of which it is invoked as to justify withholding it." 285 U.S. at 228, 52 S.Ct. at 319, 76 L. Ed. 720.

And the Court further expressed the concern that a judicial proceeding not be fractionated and its energies dispersed

by competing claims to the attention of parties, witnesses, and court alike:

> " * * * [T]he due administration of justice requires that a court shall not permit interference with the progress of a cause pending before it, by the service of process in other suits." 285 U.S. at 225, 52 S.Ct. at 318.

It is difficult to conceive of a case in which the "obstruction" to judicial administration, and hence the justification for withholding the immunity, would be greater than that here. Certainly the primary interest of justice in both the preliminary examination and the grand jury investigation, is the determination of probable cause to believe that the defendants are guilty of some crime. If the subpoenas were to be quashed, this determination would be seriously hampered: new subpoenas would have to be issued to compel attendance at a delayed grand jury investigation.

■ On the other hand, while it is true that the government effectuated service with considerably greater ease than if defendants had not been gathered together in one place, such taking advantage, or even creation, of a convenient situation does not amount to an interference with the due administration of justice. Since, as already indicated, defendants were not lured into jurisdictional quicksands that imperiled their rights or privileges, the government's unseemly eagerness in securing service of process. cannot be held to be the type of activity meant to be prevented in *Lamb*.

This court does not decide the threshold question of whether *Lamb* applies initially to the present facts, because of the strong likelihood that defendants have been served in the same cause as that involved in the complaint, as contended by the government. Defendants claim, to the contrary, that the scope of the grand jury inquiry will be much broader than the fact situation in the complaint, as evidenced by the subpoenas pursuant to 50 App. U.S.C.A. § 462.

That statute, it is true, is a veritable dragnet for offenses of protean nature, and includes prohibitions on interference with respect to all manner of Selective Service procedures. However, it does proscribe the activity of any person "who forges, alters, knowingly destroys, knowingly mutilates, or in any manner changes any * * * certificate * * * " issued by the Selective Service System. 50 App. U.S.C.A. § 462 (b) (3). Such an offense is almost identical with the one charged in the complaint against defendants. Because of this court's decision that the rule of immunity in *Lamb* does not apply to these defendants, it does not feel compelled to decide whether defendants have been served in "another" cause.

■ Defendants also invoke Dombrowski v. Pfister, 380 U.S. 479, 85 S. Ct. 1116, 14 L.Ed.2d 22 (1965), in support of their motion to quash the grand jury subpoenas. They claim that the government is improperly seeking to discourage their political activity in opposition to the draft, by calling them as grand jury witnesses. The subpoenas, consequently, are deemed to "chill" a protected area of First Amendment expression.

Beyond a perfunctory and undocumented insinuation of governmental misconduct, there is insufficient evidence in the record to indicate a deliberate scheme of governmental harassment or persecution of the defendants. They concede that their charges depend upon a suspicion, or "inference," of misuse of the inquisitorial power, derived, it would seem, largely from the unpopularity of their views and practices with the authorities. However, they concede as well that this court is not the proper instrument to initially produce support for their belief, and

> "that a preliminary examination * * * might go a long way toward providing * * * a hearing * * *

to test the legitimacy of this inference." [Defendants' Memorandum In

Support of Application That Subpoenas Be Quashed, p. 8, ftn. 5; p. 8].

Without a more specific showing of governmental misconduct, the factual requirements of *Dombrowski* have not been met.

"[I]t does not appear that the [defendants] 'have been threatened with any injury other than that incidental to every criminal proceeding brought lawfully and in good faith, * * *.' Douglas v. City of Jeannette, 319 U.S. 157, 164, 63 S.Ct. 877, 87 L.Ed. 1324 [1943]." Dombrowski v. Pfister, 380 U.S. at 485, 85 S.Ct. at 1120.

Moreover, there are no allegations that the statute with regard to which defendants were subpoenaed, for all its breadth and far-ranging scope, is void on constitutional grounds. There are no representations that the prosecution of defendants is not intended to be completed in good faith; indeed, the impending grand jury investigation would indicate the government's steadfastness in this purpose. Finally, suspicions of the government's bad faith are diluted by its consent to generous extensions of bail limits with respect to all defendants. Cf. Cameron v. Johnson, 390 U.S. 611, 619, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1967); DuBois Clubs of America v. Clark, 389 U.S. 309, 312, 88 S.Ct. 450, 19 L.Ed.2d 546 (1967).

This court is not asked to enjoin the government's prosecution of defendants, as was the Supreme Court in *Dombrowski*. That is one indication that defendants' First Amendment freedoms are not felt to be seriously threatened. In fact, the question of impropriety with regard to the issuance of the subpoenas is only colorable in conjunction with the delay in granting the preliminary examination. Even as to that, there is no evidence of any nefarious intent to deprive defendants of any rights, constitutional or otherwise.

■ There is, however, a disquieting history of governmental laxity with respect to the holding of preliminary examinations in the Southern District of New York. See *infra*, note 1. This is not to be condoned, especially where, as here, governmental practices may imperceptibly lead to a "chilling" effect on First Amendment freedom of expression.

In the light of this court's order, dated September 24, 1969, with respect to the holding of a preliminary examination on or before September 29, 1969, the motion to quash the subpoenas is denied.

*The Preliminary Examination*

On the oral argument, the government justified its request for the five postponements of the preliminary examination on the grounds of the complex fact situation alleged to be present here. Because a large number of persons were at the July 3, 1969 rally at which defendants were observed, and because not all of them had draft records in their possession, it is argued that it is difficult for the government to identify the parties guilty of the offense charged.

■ This justification is most damning, however. The reason for the government's delay—uncertainty of the guilt of the named defendants—is the very reason for a speedy preliminary examination. An innocent accused should not have an arrest hanging over her head for more than 60 days without an opportunity for a determination of probable cause for her loss of freedom and her continuing interest to the authorities. The preliminary examination is not intended as a vehicle for establishing guilt beyond a reasonable doubt. If the government cannot show that it had probable cause to arrest the defendants, then its arrests were unlawful and the defendants should go free.

The government also says in its opposing affidavit (pp. 4–5) that on each occasion on which it requested a delay, "it indicated to the Court its unpreparedness to proceed, stating as its chief reasons, the then unavailability of evidence taken from each defendant at the time immediately preceding their [sic] arrest, which was undergoing laboratory and

other tests, and the unavailability of necessary civilian witnesses then on summer vacation." But the government has now moved to bring these defendants before a grand jury on September 29, one day before the date set by the Commissioner for a preliminary hearing. Having taken this step, it seems proper to assume that the government will be prepared on that date to present evidence to the grand jury sufficient for it to find probable cause to believe that these defendants have committed the crime charged.

Neither this court nor the government should furnish evidence to support the charge that the prosecution has been engaging here in the frequently used tactic of delaying the preliminary examination out of existence.[1] Congress recognized that commissioners have also rou-

tinely acquiesced in the government's requests for adjournments, despite the firm requirement of Rule 5(c) that a hearing be held within a "reasonable time.[2] "

Congress sought to remedy the lack of a speedy hearing by enacting the Federal Magistrates Act, P.L. 90–578, 82 Stat. 1107 (October 17, 1968), 1 U.S. Code Cong. & Admin.News, p. 1280. [Hereinafter referred to as the "Act"]. Title 18 U.S.C.A. § 3060 (1964)[3] was amended by § 303 of the Act to require the commissioner to order a hearing within 10 days for in-custody defendants, and within 20 days for defendants who are released, unless defense counsel consents to the delay or exceptional circumstances are found by the district court.[4]

---

1. It has been charged that prosecutors do everything in their power to delay the preliminary examination until after the indictment is obtained, because once the indictment has been returned, "[m]ost courts * * * deny [the defendant an opportunity to have a preliminary examination] on the ground that the issue of delay was mooted by indictment." United States ex rel. Wheeler v. Flood, 269 F.Supp. 194, 197 (E.D.N.Y.1967) (Weinstein, J.) (cases cited therein). *See* Statement of Professor Younger on the United States Commissioner System, Hearings of the Subcommittee on Improvements in Judicial Machinery, Senate Committee on the Judiciary, 89th Cong., 2d Sess., at 218–220 (Feb. 1966). See also Judge Weinfeld's statement that the preliminary examination
 "has fallen into disuse, at least in the Southern District of New York [, and that he is] unaware of any instance in the last several years in which a defendant has been accorded a hearing. * * *" Second Circuit Judicial Conf.
 Panel Discussion on the Problems of Long Criminal Trials, 34 F.R.D. 155, 165 (S.D.N.Y.1963).
 A leading authority also observes that: "While statistics compiled by the Administrative Office indicate an approximate 20 percent rate of preliminary hearings, a disproportionate number of these appear to be held in districts where the grand jury meets infrequent-

ly. *In the Southern District of New York, for example, only a handful of preliminary hearings have been held in recent years.*" (Emphasis Supplied) 8 J. Moore, *Federal Practice*, ¶ 5.04[3], at 5–34, n. 13 (1969).

2. S.Rep.No.371, 90th Cong., 1st Sess. 33 (1967). Fed.R.Crim.P. 5(c):
 "[T]he commissioner shall hear evidence within a reasonable time."

3. Old § 3060 was merely a directive to consult Fed.R.Crim.P. 5.

4. 18 U.S.C.A. § 3060 (1969) [hereinafter referred to as Section 3060]:
 "(b) * * * Except as provided by subsection (c) of this Section, * * * such examination shall be held within a reasonable time following initial appearance, but in any event not later than—
 (1) the tenth day following the date of the initial appearance of the arrested person before such officer if the arrested person is held in custody * * *; or
 (2) the twentieth day following the date of the initial appearance if the arrested person is released from custody * * *.
 "(c) With the consent of the arrested person, [after opportunity to consult counsel], the date fixed by the judge or magistrate for the preliminary examination may be a date later than that prescribed by subsection (b), or may be continued one or more times to a date subsequent to the date initially fixed therefor.

In effect, the Act mandates a speedy determination of probable cause within precise limitations of time.[5] The Act's restrictions on the commissioner's discretion to grant postponements may not, however, lead to more numerous preliminary examinations: the government can avoid the necessity *for holding them either by obtaining indictments more quickly, so that the preliminary examinations would become moot,[6] or by letting the applicable time period lapse, allowing the complaints to be dismissed, and proceeding by indictment at some later date;[7] and defense counsel may not take advantage of the defendant's right to a speedy hearing, because of ignorance or choice.[8] Given the preliminary examination's great importance to the administration of justice,[9] it is to be hoped nevertheless that there will be a marked increase in its use.

■■ Defendants Webster and Forest have not consented to a postponement of the preliminary examination since July 22, 1969, more than 60 days ago. Such a long delay clearly violates the requirement of Rule 5(c) that a hearing be held within a reasonable time, even without the guidance of the Federal Magistrates Act. As indicated previously, and stated by Judge Weinstein, "[i]nconvenience to the prosecutor is never an excuse for denying the preliminary examination." United States ex rel. Wheeler v. Flood, 269 F. Supp. 194, 198 (E.D.N.Y.1967).

In the absence of such consent of the accused, the date fixed for the preliminary hearing may be a date later than that prescribed by subsection (b), or may be continued to a date subsequent to the date initially fixed therefor, only upon the order of a judge of the appropriate United States district court after a finding that extraordinary circumstances exist, and that the delay of the preliminary hearing is indispensable to the interests of justice."

The government alleges no "extraordinary circumstances" to justify its delay *of 21 days, from September 9—September 30, 1969, and this court finds none to excuse such delay. See discussion, *supra.*

5. "This procedure is designed to insure that a determination of probable cause is made—by either the magistrate, some other judicial officer, or the grand jury— soon after a person is taken into custody. No citizen should have his liberty restrained, even to the limited extent of being required to post bail or meet other conditions of release, unless some independent judicial determination has been made that the restraint is justified." S. Rep., *supra* note 2, at 34.

6. See note 1, paragraph 1, *supra.*

7. *Section 3060(d) permits the government to indict after the dismissal of the complaint.*

8. " * * * [M]any defense counsel prefer to waive preliminary hearings since they may [otherwise] harden and preserve the government's case." United States ex rel.

Wheeler v. Flood, 269 F.Supp. 194, 198 (1967).

9. Judges and commentators have recognized the crucial function of the preliminary examination in the criminal process. Beyond its basic purpose of affording an expeditious determination of probable cause, it enables the defense counsel to discover a part of the government's case, and, through cross-examination of government witnesses, to expose its weaknesses or strengths. Either result can lead to the avoidance of a trial,—because of the government's decision not to prosecute, or because of defense guilty pleas— "a contingency which benefits the prosecution, the public, and the defense." Note, The Preliminary Examination in The Federal System: A Proposal For a Rule Change, 116 U. of Pa.L.Rev. 1416, 1419 (1968). For a collection of cases discussing the importance of the discovery function of the preliminary examination, see United States ex rel. Wheeler v. Flood, 269 F.Supp. 194, 198 (E.D.N.Y. 1967). See, e. g., Hearings on S. 3475 and S. 945 Before the Subcommittee on Improvements in Judicial Machinery, Senate Committee on the Judiciary, 89th Cong., 2d Sess., 90th Cong., 1st Sess. 132– 147 (Statements of Sam Dash and Gerhard Mueller); 8 J. Moore, Federal Practice, ¶ 5.04[1], at 5–31 (2d ed. 1969); see also United States ex rel. Hughes v. Gault, 271 U.S. 142, 152, 46 S.Ct. 459, 70 L.Ed. 875 (1926) (concurring opinion of Justice Brandeis).

■ Although defendants Green, Czarnik, Kennedy, and Boskey consented to postponements up until September 9, 1969, the proposed adjournment to September 30, 1969 will have been 21 days. Such a delay is not so clearly unreasonable. However, on these facts it is unreasonable because the government is uncertain as to who "did receive, conceal and retain without authority records of a department and agency of the United States."[10] The government's procrastination is all the more deplorable when the accused are deeply involved in political activities, and their arrest grew out of a protest, aimed against the Vietnamese War. An extended, languorous prosecution (even if the accused are ultimately found to be innocent) would definitely have a "chilling" effect on the desire of these defendants, and others, to engage in their fundamental right to protest governmental policies. Cf. Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), and discussion *supra.*

■ In addition, this court holds that 18 U.S.C.A. § 3060 (1969), as amended by the Act, has been in effect in the Southern District of New York since its enactment on October 17, 1968, and that the proposed 21-day postponement of the preliminary examination is violative of it.

The government argues that § 3060 does not take effect in this district until a federal magistrate has assumed office, and that no magistrate has done so yet. The plain language and legislative history, as well as the unmistakable policy, of § 3060 all point to the enactment date of the Act as the effective date of this Section.

Section 403 of the Act states:

"Except as otherwise provided by sections 401 and 402, this Act shall take effect on the date of its enactment."

Section 402(a)[11] seeks to insure that commissioners will continue to sit up until the time that the magistrates assume office. Section 402(b) prevents the existing commissioners from exercising any of the new, expanded powers given to the more qualified magistrates.[12] It does so by deferring implementation of the expanded powers until the first magistrate has assumed office,[13] or until 3 years have elapsed, whichever occurs first.

Section 3060 does not give any new powers to the magistrates that the old commissioners did not have; rather, it "clarifies existing law with regard to the preliminary hearing." H.R.Rep. No. 1629, 90th Cong., 2d Sess. 8 (1968), 3 U.S.Code Cong. & Admin.News at 4253, 4265 (1968); see S.Rep.No. 371, 90th Cong., 1st Sess. 33–36 (1967).

■ Congress could not have intended the bizarre result that a statute attempting to bring uniformity to the definition of "reasonable time",[14] would

10. Complaint, United States v. Valentine Green, et al., *supra,* at 1 (July 3, 1969).

11. Section 401 is not discussed because it deals only with the mechanics of the transition to the new system and could not possibly refer to § 3060.

12. A present commissioner does not have to be a lawyer, but a full-time magistrate must be (except in special circumstances) " * * * a member in good standing of the bar of the highest court of the state in which he is to serve * * *." Section 631(b) (1) of the Act.

13. At first glance it seems strange that the powers should vest as soon as the first magistrate is appointed. However, it becomes clear, when § 401(a) is read together with it: the commissioners' terms end as soon as the first magistrate assumes office.

14. The evil sought to be remedied was the variance between the districts as to the meaning of 'reasonable time': "Testimony before the Subcommittee on Improvements in Judicial Machinery, and the answers to questionnaires circulated by the sbucommittee [sic] to all commissioners revealed that there is much uncertainty [among the districts], * * * and that there is a great variance from judicial district to district, and, indeed, even among commissioners in the same district * * *". S.Rep., *supra* note 2, at 33.

have the opposite short-range effect of creating a patchwork of uneven contours of permissible delay in holding the preliminary examination. Districts with magistrates would apply the specific time limits of § 3060; those with commissioners would retain the old and indefinite time limits.

Finally, as defendants rightly argue, if § 3060 falls without § 403 of the Act, then § 403 is a nullity. For it is difficult to find any section that is more remote from the meaning of §§ 401 and 402 of the Act, than § 3060. See 8 J. Moore, Federal Practice at 11–12, ftn. 15.1 (by Cipes, 2d ed.) (Cum. Supp.1969) (Effective date is enactment date).

 Therefore, this court holds that all the defendants have been denied a timely preliminary examination, according to the dictates of both Rule 5(c), Fed.R.Crim.P., and of § 3060. Violation of Rule 5(c) does not mandate dismissal of the complaint against defendants, but gives the court great flexibility in framing relief to aggrieved defendants. Cf. Blue v. United States, 119 U.S.App.D.C. 315, 342 F.2d 894 (1964), cert. denied, 380 U.S. 944, 85 S.Ct. 1029, 13 L.Ed.2d 964 (1965); United States ex rel. Wheeler v. Flood, *supra*. Section 3060 does authorize dismissal of the complaint. However, because the government relied on the belief that § 3060 was not in effect in this district, and because a speedy determination of probable cause in this case is necessary to protect defendants' First Amendment freedom of expression, this court will not dismiss the complaint. Instead, the government will be required to afford each defendant an opportunity for a preliminary examination before the United States Commissioner on Monday, September 29, 1969, at a time prior to the appearance of any of the defendants before the grand jury investigation for which they have been subpoenaed on that day. If the government fails to comply with this order with respect to any defendant, the complaint will be dis-

missed and all conditions of release dissolved, with respect to that defendant. See Order of this court dated September 24, 1969.