The Honorable Dwayne Dobbins State Representative Post Office Box 5172 North Little Rock, Arkansas 72119-5172
Dear Representative Dobbins:
I am writing in response to your request, made on behalf of a constituent, for an opinion on a question you phrase as follows:
 If a family member; i.e. husband or wife, is suspended from running a daycare center can their child or close family member, i.e., niece or nephew, be suspended from running a day care center also?
RESPONSE
Correspondence attached to your request indicates that the question pertains to the "1088 Exclusion Rule." This is a Department of Human Services or "DHS" policy that governs the exclusion of certain persons from contracting with DHS. Although I am a little uncertain as to the facts behind your question, I assume, because your question mentions "Rule 1088," that you are referring to a situation where a particular child care licensee has or had a contract with DHS to provide child care or nutrition services and then has been excluded from contracting under this system for some infraction your question does not detail. The question you pose is whether, in such a situation, the contractor's "child or close family member, i.e., niece or nephew [can] be suspended from running a day care center also." Your question is apparently not, as might be suggested from its wording above, whether the suspension from "running" a child care center also prohibits a family member from "running" a child care center. The "running" or licensure of such centers is not addressed by DHS Policy 1088, which applies solely to contracting and receiving public moneys from DHS.
If this is a correct reading of the issue, in my opinion the answer to the question is "yes" with regard to a "child" or immediate family member of the suspended person (those persons may be excluded under Policy 1088), but that more facts regarding the relationship of the "niece or nephew" would be needed to answer the question as to them. Immediate family members of persons excluded under Policy 1088 are excluded from contracting, but nieces and nephews are not included in the definition of "immediate family." The Policy also excludes, however, "a person or an entity associated or affiliated with, or which shares common ownership, control or common board members, or which has control of or is controlled by the participant." If the niece or nephew fit within this definition, they would also be excluded from contracting. To the extent your question inquires as to the constitutionality of this portion of Policy 1088, it is my opinion as a general matter that this aspect of the Policy would pass constitutional muster.
I should note, however, that the application of the relevant law and Policy may depend upon the determination of all the facts surrounding a given situation. You have not detailed the exact facts giving rise to your question and I cannot determine in this format the applicability, legality, or constitutionality of the Policy in light of individual factual circumstances. There is an administrative procedure for contesting exclusion determinations at DHS. Affected parties should follow that procedure rather than rely upon an advisory Attorney General opinion which, of necessity, cannot address any particular or disputed facts.
Although the facts of your question are not well-defined, I assume you are inquiring about the applicability and the constitutionality of the portion of DHS Policy 1088 that excludes "related part[ies]" of DHS contractors from contracting with DHS after the exclusion of the contractor. Some explanation is necessary.
DHS Policy 1088 is entitled the "DHS Participant Exclusion Rule." Section I of Policy 1088 provides as follows:
 A. DHS shall conduct business only with responsible participants. Participants will be excluded from participation in DHS programs not as penalty, but rather to protect public funds, the integrity of publicly funded programs, and public confidence in those programs.
 B. Participant exclusion is a serious action that shall be used only in the State's best interests and for the protection of the public and DHS. DHS shall impose exclusion only in accordance with this rule.
Section II, (B) provides that the "rule applies to all contracts, grants and agreements between DHS and participants involving the expenditure of appropriated funds. The rights, obligations, and remedies created and imposed by this rule are in addition to any other laws and rules pertaining to contracts and grants." Subsection (C) of Section II lists the causes for exclusion, ranging from convictions for criminal offenses to deliberate failure to perform in accordance with the requirements in the contract or grant.
Subsection (D) of Section II details the effect of exclusion as follows:
 Exclusion applies to all participants, related parties, and the heirs and assigns of the participants and related parties. Excluded participants may not receive appropriated funds except to the extent such funds are for proper charges approved before the date of exclusion and provided that any payments are limited to the amount by which the proper charges exceed the amount of any indebtedness to DHS.
 DHS shall maintain a list of excluded participants. Upon being listed as an excluded participant, the participant cannot continue as a party to any DHS contract or grant, and is ineligible to submit proposals, bids, or applications to DHS for the term of the exclusion.
(Emphasis added).[1]
The Policy on its face provides for the exclusion of the participant and "related parties." The term "related parties" is defined at Section II (A)(16) of the Policy as "an immediate family member or a person or an entity associated or affiliated with, or which shares common ownership, control, or common board members, or which has control of or is controlled by the participant." "Immediate family member" is defined at Section II (A)(12) of the Policy as "spouse; natural or adoptive parent, child or sibling; step-parent, child, or sibling; father, mother, brother, sister, son or daughter-in-law; grandparent or grandchild."
In response to your question, therefore, Policy 1088 clearly excludes the "child" of an excluded participant. The definitions of "related parties" and "immediate family member" make this clear. The definition of "immediate family member," however, does not include a niece or nephew. It must therefore be determined whether a niece or nephew falls within the other portion of the definition of "related parties," as a "person or an entity associated or affiliated with, or which shares common ownership, control, or common board members, or which has control of or is controlled by the participant." Obviously this will involve a factual determination. If the niece or nephew fit within this description, he or she will also be excluded as a "related party."[2]
Correspondence submitted in connection with your request indicates a question regarding constitutionality of this Policy. I assume, although it is not stated, that the question involves a concern as to substantive
due process. (The Policy provides in Section III (B) that "[a]dministrative due process shall be accomplished via existing DHS processes for appeals by participants." I assume the constitutional concern is not focused, therefore, on procedural due process.)[3]
Due process rights are either substantive or procedural. Substantive due process requires that legislation be rationally related to achieving a legitimate governmental purpose. Johnson v. Encompass Insurance Company,
03-305, 355 Ark. 1, 130 S.W.3d 553 (2003), citing Smith v. Denton,320 Ark. 253, 895 S.W.2d 550 (1995). It is my opinion that on its face, the Policy would pass constitutional muster under the test for analyzing substantive due process claims.
"To determine whether a violation of an individual's substantive due process rights has occurred, the question is whether the officials acted in an arbitrary or capricious manner, or so as to shock the conscience."Herts v. Smith, 345 F.3d 581 (8th Cir. 2003). Moreover, it has been stated that "[a]gency action may not be set aside on grounds that it is arbitrary and capricious if the action is rational, based on relevant factors, and within the agency's statutory authority." Sutton v. U.S.Dept. of Housing and Urban Development, 885 F.2d 471, 475 (8th Cir. 1989), citing Frisby v. HUD, 755 F.2d 1052, 1055 (3d Cir. 1985).
It has been stated in a similar context that "the rationale for extending a debarment or suspension to affiliates is to prevent the actual wrongdoer from using the affiliate to circumvent its exclusion." Gordon,Suspension and Debarment from Federal Programs, Pub. Cont. L.J. 573, 588 (Summer 1994). Obviously, the exclusion of one party from contracting with the state could be circumvented if the contracting party could continue to reap the same benefits by utilizing immediate family members or close associates to contract under another name. In my opinion, therefore, as a general matter such a policy is rationally related to achieving a legitimate governmental purpose.
I should reiterate, however, that I cannot reach a definite conclusion with regard to any particular case without reference to all the pertinent facts. As stated with regard to a due process challenge in an analogous debarment process, "[t]o examine appellees' due process contentions on the present record, however, would produce the result deplored by the Supreme Court in DuBois Clubs v. Clark, 389 U.S. 309, 88 S.Ct. 450,19 L.Ed.2d 546 (1967), and `[t]he effect would be that important and difficult constitutional issues would be decided devoid of factual content. . . .' 389 U.S. at 312, 88 S.Ct. at 452." Delzer ConstructionCo. v. United States, 487 F.2d 908, 910 (8th Cir. 1973).
Resolution of the question in any given circumstances must therefore necessarily depend upon an analysis of all pertinent facts.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh
[1] The exact statutory authorization for the promulgation of Policy 1088 is not stated. The policy itself does not indicate whether it is adopted under the authority of A.C.A. § 19-11-245 (the portion of the "Arkansas Purchasing Law" governing debarment or suspension) (see also,
Arkansas Office of Financial Services "Contract Manual," Chapter 5) and/or under one or more specific federal regulatory schemes such as42 U.S.C. §§ 618 and 9858 and 45 C.F.R. Part 98 (governing distribution of federal Child Care and Development Funds); or 42 U.S.C. §§ 1758; 1759a; 1765 and 1766 and 7 C.F.R. Part 226 (governing the Child and Adult Food Care Program); or under some type of authority implied from DHS' charge to administer such programs. See A.C.A. 20-78-205(b)(1) (requiring the DHS Division of Child Care and Early Childhood Education to administer the Child Care and Development Block Grant and other child care funds, state and federal). See also e.g., West v. Bergland, 611 F.2d 710 (8th
Cir. 1979) (discussing implied authority of Secretary of Agriculture to suspend provision of meat grading services and relying upon Gonzales v.Freeman, 118 U.S. App. D.C. 180, 334 F.2d 570 (D.C. Cir. 1964), which found implied authority for the Secretary of Agriculture's debarment process). Reference to the particular facts surrounding the exclusion of a contractor may be necessary to determine the precise statutory sanction for the application of the policy in particular instances.
[2] Particular provisions of federal law may require more expansive exclusion. See, for example, 7 C.F.R. Part 226.2, a portion of the Child and Adult Food Care Program, defining a "responsible principal" or "responsible individual" as including: 1) a compensated or uncompensated principal; 2) any other individual employed by, or under contract with an institution or sponsored center; or 3) an uncompensated individual; any of whom the state agency determines to be responsible for an institution's serious deficiency. Again, you have not stated the exact nature of the DHS contract at issue.
[3] Procedural due process is about when and how the state may deprive a person of property or liberty; it involves the procedures a state must follow before a right is taken away. A plaintiff must prove that as a result of state action he was deprived of some life, liberty, or property interest and that the state's deprivation of that interest was done without due process. It has been stated, however, with regard to the existence of a property interest, that: "citizens suspended from doing business with the government have no constitutionally protected property interest in obtaining government contracts." Sutton v. U.S. Dept. ofHousing and Urban Development, 885 F.2d 471 (8th Cir. 1989), citing ATL,Inc. v. United States, 736 F.2d 677, 683 (Fed. Cir. 1984); TranscoSecurity, Inc. v. Freeman, 639 F.2d 318, 321 (6th Cir.), cert. denied,454 U.S. 820, 102 S.Ct. 101, 70 L.Ed.2d 90 (1981); and Gonzalez v.Freeman, 334 F.2d 570, 574 (D.C. Cir. 1964). The court in ATL, Inc.
noted, however, that a bidder who lacks a property interest in a government contract might still have a liberty interest at stake "where the suspension is based on charges of fraud and dishonesty." ATL, Inc.v. United States, supra at 683 (footnote omitted).